AYDEN TRACTORS, INC. v. BEVERLY GASKINS AND ARTIS GASKINS v. MASSEY-FERGUSON, INC.

No. 823SC397

(Filed 19 April 1983)

**1. Sales § 17.1— revocation of acceptance—breach of warranty**

The evidence was sufficient to support the trial court's determination that defendants justifiably revoked their acceptance of a combine purchased from plaintiff within a reasonable time after defects therein were not cured, that the remedy provided by an express warranty failed in its essential purpose, and that defendants were entitled to recover the purchase money previously paid to plaintiff.

**2. Trial § 57— nonjury trial—conclusiveness of findings**

Findings of fact made by the court sitting without a jury are conclusive on appeal if supported by competent evidence, and it is presumed that the trial judge considered only the competent evidence and discarded the rest.

APPEAL by plaintiff and third-party defendant from *Rouse, Judge.* Judgment entered 24 November 1981 in Superior Court, PITT County. Heard in the Court of Appeals 17 February 1983.

This controversy arose out of the purchase, by the Gaskins brothers, of a diesel combine from Ayden Tractors, Inc. (Ayden).

Because of alleged defects in that equipment, and numerous unsuccessful attempts by Ayden to cure the defects, the Gaskins returned the combine to Ayden. Ayden sued on the resulting unpaid balance and on an open account. The Gaskins counterclaimed, alleging, primarily, that the defective nature of the combine constituted a breach of the express warranty, and that because they had properly revoked their acceptance of the machine, they were entitled to a refund of the purchase price, consequential damages, attorney's fees and costs. From a judgment for defendants, the Gaskins brothers, plaintiff and third-party defendant Massey-Ferguson, Inc., appeal to this Court.

*Everett & Cheatham, by Edward J. Harper, II, for plaintiff appellants.*

*Harrell & Titus, by Richard C. Titus, for third-party defendant appellant.*

*Barker, Kafer & Mills, by James C. Mills, for defendant appellees.*

BECTON, Judge.

I

*Procedural and Factual History*

The lengthy and involved factual and procedural background of this case follows. On 1 October 1975 defendants, the Gaskins brothers, entered into a contract for and purchased a Massey-Ferguson model 750 combine, a Cornhead and a grain table, from the plaintiff, Ayden Tractors, Inc., for $43,500. Defendants tendered, at that time, a Gleaner with trade-in value of $7,500. They made a $7,625 down payment, $3,825 of which was cash, the balance evidenced by a promissory note in the principal amount of $3,800. That note was due on 1 November 1975; plaintiffs charged no interest on the $3,800. The reverse of the purchase contract contained a warranty agreement covering the purchased equipment, which provided:

All NEW Massey-Ferguson agricultural machines and equipment (hereinafter called products) are sold by the dealer upon the following warranty and agreement given by the dealer, WHICH IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES AND CONDITIONS EXPRESSED OR IMPLIED, INCLUDING

THE WARRANTIES AND CONDITIONS OF MERCHANTABILITY
AND FITNESS FOR PURPOSE, and any other obligation on the
part of the dealer or Massey-Ferguson. The dealer neither
assumes nor authorizes any person to assume for it any other
liability in connection with the sale of such products. The
obligation of the dealer or Massey-Ferguson, under this war-
ranty, is limited to replacing parts, at no charge to the
Buyer, which prove defective with normal and proper use of
the product for the purpose intended.

This warranty applies only to a new, unused Massey-
Ferguson product, there being no warranty of any nature in
respect to used products or new products that have been
modified or altered, repaired, neglected, or used in any way
which, in the opinion of the dealer or Massey-Ferguson,
adversely affects its performance.

All such new, unused Massey-Ferguson products are war-
ranted to be free from defects in material or workmanship,
which may cause failure, for a period of twelve months from
the date of delivery to Buyer or 1500 hours of use, whichever
occurs first.

It is the responsibility of the Buyer, at his expense, to
transport the machine or equipment to the dealer's service
shop or, alternatively, to reimburse the dealer for any travel
or transportation expense involved in fulfilling this warranty.
When requested by the dealer, part or parts shall be re-
turned for inspection, transportation prepaid, to a place
designated by the dealer. IN NO EVENT SHALL THE BUYER
BE ENTITLED TO RECOVER FOR INCIDENTAL OR CONSEQUEN-
TIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF
CROPS, INCONVENIENCE, RENTAL OF REPLACEMENT EQUIP-
MENT, LOSS OF PROFITS, OR OTHER COMMERCIAL LOSS.

Defendants took delivery of the combine and accessories on 1
October 1975. The following day they began to experience prob-
lems with the combine. Evidence tended to show that the com-
bine's diesel engine would overheat and then be automatically
shut-down by a safety valve mechanism. Defendants testified that
it ran about thirty minutes and stopped. Plaintiff was notified,
and a serviceman was promptly dispatched. The safety valve was
removed. For the remainder of the 1975 harvest season the

machine worked properly about one-third (⅓) of the time it was in use. Defendants admit that plaintiff's representatives responded promptly on each of the numerous occasions service calls were made, and that parts of the combine were taken into the shop, repaired and returned. This work was all "under warranty."

In addition to the heating problem, defendants noticed, during the 1976 harvest season, that the combine's engine had begun to "use oil." Defendant Artis Gaskins testified that plaintiff's serviceman removed the engine, kept it for about a week, and reinstalled it into the combine. Further: "After they [Plaintiff] put the motor in the machine, we tried to use it some more. It would still run hot. Still do the same thing when we used it an hour or sometimes two." Toward the end of the 1976 season, the engine overheated, a hydraulic line burst, and the engine caught fire. Plaintiff was called, and its representative came to defendants' farm and removed the combine to Ayden, North Carolina. Plaintiff kept the combine from late fall of 1976 to sometime in August of 1977.

Apparently, because of the numerous problems defendants experienced with the machine, plaintiff asked the manufacturer and third-party defendant, Massey-Ferguson, Inc., to extend the warranty covering defendants' machine. This modification was made in June of 1977. Defendants contend that a refinancing agreement was also executed in June of 1977, extending the repayment period on the debt owed for the combine. Plaintiff agrees that the warranty was extended in June 1977 but argues that the renewal contract was not executed until 22 December 1977. The parties are in accord on the fact that the renewal contained the following pertinent provisions:

> In further consideration of such renewal, refinancing, restatement and extension of time of payment, *I hereby expressly waive all claims arising out of the purchase of said property and all defenses, statutory or otherwise, to the payment hereof.* I understand and agree that the execution and delivery of this agreement shall not rescind or revoke the refinanced Contract(s) or affect in any way the rights and obligations thereunder except as expressly amended or revised herein. [Emphasis added.]

Defendants began the 1977 harvest season using the combine. Despite extensive repairs made by plaintiff during the spring of 1977, the combine continued to overheat. Also, defendants testified that the batteries were not sufficiently charged by the machine's engine. Beverly Gaskins testified that plaintiff's representative admitted to him and his brother that plaintiff could not correct the problem.

Subsequently, either in November 1977 or January 1978, defendants informed plaintiff that they were returning the combine, and asked plaintiff to refund that portion of the purchase price already paid. Plaintiff took possession of the combine in early 1978. Plaintiff sued, alleging that defendants owed $1,600 on the promissory note evidencing the partial down payment and $3,072.23 on an open account, and asked for judgment in those amounts against defendants with interest on same. Defendants answered, denying the principal allegations of the complaint, and counterclaimed, alleging that the problems with the combine and plaintiff's inability to correct them constituted a breach of warranty, and that the "down time" caused them financial loss. Defendants sought refund of the purchase price, down payment, and interest paid to date, lost profits, consequential damages, attorneys' fees and costs. Defendants filed, at the same time, a Third-Party Complaint against Massey-Ferguson, Inc. and Massey-Ferguson Credit Corporation, as manufacturer and lien holder, respectively. Defendants prayed for the same relief against the third-party defendants as they did against plaintiff, and in addition, asked that the original sales contract and financing agreement dated 1 October 1975 be declared null and void.

Plaintiff moved to dismiss the defendants' counterclaim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, replied to the counterclaim in the alternative, and filed a cross-claim against the third-party defendants for indemnification. Similarly, the third-party defendants moved to dismiss the Third-Party Complaint pursuant to Rule 12(b)(6) and filed, in the alternative, defenses to that Complaint.

Plaintiff moved for summary judgment on its claim for relief and against defendants on their counterclaim. A hearing in Pitt County Superior Court was held on plaintiff's motion together with third-party defendant's summary judgment motion. The trial

court entered an order on 25 September 1979, granting plaintiff's first cause of action ($1,600, interest and costs), denying defendants' counterclaim, and continuing plaintiff's second cause of action ($3,072.23 on the open account). The court treated third-party defendant Massey-Ferguson Credit Corporation's Rule 12(b)(6) motion to dismiss as a motion for summary judgment and dismissed defendants' claim against it. Defendants appealed to this Court.

Upon filing and service of briefs, plaintiff and third-party defendants moved that the matter be remanded to Pitt County Superior Court because the issue of revocation of acceptance was not raised in the trial court but rather was raised for the first time on appeal. The Credit Corporation argued also that defendants failed to argue the impropriety of the dismissal in its favor and thus had abandoned its appeal as to the judgment for the Credit Corporation. This Court reversed the trial court's order with respect to plaintiff and third-party defendant Massey-Ferguson, Inc.; it affirmed the dismissal of the action against the Massey-Ferguson Credit Corporation and remanded the matter to the Superior Court of Pitt County.

A trial was held before the Honorable Robert Rouse, sitting without a jury, in Superior Court, Pitt County. After hearing the evidence, the trial court found, *inter alia,* that due to the continuing pattern of problems with the combine, the defendants justifiably revoked their acceptance of the combine within a reasonable time after the defects were not cured and gave notice of revocation in apt time. The trial court found further that the Gaskins reasonably expected that the defects in the combine had been or would be cured. Upon those and the other findings, the trial court concluded that plaintiff was not entitled to recover the balance of the purchase price but was entitled to recover the arrearage on the pre-existing open account. It further concluded and ordered that while defendants were entitled to recover the purchase money previously tendered to plaintiff, they were not entitled to recover consequential damages, and that the remedy provided by the express warranty given defendants failed in its essential purpose. Finally, the trial court ordered that plaintiff could recover, on its cross-claim against Massey-Ferguson, Inc., the sums awarded defendant.

## II

*Motion To Dismiss*

**[1]** Plaintiff and third-party defendant raise fifty-eight (58) assignments of error and bring forth twelve (12) arguments on appeal. Appellants, by their first argument, contend that the trial court erred when it denied both plaintiff's and third-party defendant's motions to dismiss defendants' counterclaim and third-party claim, made pursuant to Rule 41(c) of the North Carolina Rules of Civil Procedure. Involuntary dismissal under Rule 41(b) is properly granted in the following circumstances: (1) if the party with the burden of proof has shown no right to relief, or (2) if that party has shown a right to relief but the trial court as trier of fact determines that the movant is entitled to a judgment on the merits. *Jones v. Insurance Co.*, 42 N.C. App. 43, 255 S.E. 2d 617 (1979). "The question raised [by a] motion to dismiss [pursuant to Rule 41(b)] made at the close of all the evidence is whether any findings of fact could be made from the evidence which would support a recovery for [the party with the burden of proof]." [Citation omitted.] *Neasham v. Day*, 34 N.C. App. 53, 55, 237 S.E. 2d 287, 288-89 (1977). The denial of the appellants' motions and entry of judgment for defendants *sub judice* means that the trial court concluded that defendants presented sufficient evidence to show a right to relief. Since our review of the record reveals that that conclusion was supported by findings of fact based on competent evidence, we affirm the trial court's denial of appellants' motions. *Cf. Jones v. Insurance Co.* at 46, 255 S.E. 2d at 619 (denial of motion for involuntary dismissal and entry of judgment for plaintiff *held*, reversible error because conclusion not supported by findings based on competent evidence).

## III

*Evidentiary Rulings*

Appellants' eleven remaining arguments concern evidentiary rulings of the trial court. Because the trial court made numerous factual findings and evidentiary rulings, we set forth appellants' contentions concerning them *seriatim*. Argument # : . . .

2. The trial court erred when it found that the combine was defective, based on testimony given by lay witnesses.

3. The trial court erred when it found as a fact and concluded that defendants' revocation of acceptance was reasonably made in a timely fashion.

4. The trial court erred when it found as a fact and concluded as a matter of law that defendants reasonably expected defects in the combine had been or would be cured and that defendants' acceptance of the equipment was induced by plaintiff's assurances that the nonconformity would be cured.

5. The trial court admitted evidence, extrinsic to the warranty contract, in violation of the parol evidence rule.

6. The trial court erroneously assumed that the gravamen of defendants' counterclaim and third party complaint was breach of express warranty.

7. The trial court erroneously found that defendants relinquished the combine in November 1977, and should have found that defendants returned it in January or February of 1978.

8. The trial court admitted evidence concerning the date of the renewal contract in violation of the parol evidence rule.

9. The trial court admitted evidence relevant only to matters not pleaded.

10. The trial court failed to find that plaintiff was entitled to recover interest on the unpaid open account at an A.P.R. of 18%.

11. The trial court erroneously admitted testimony concerning the legal effect of a letter.

12. The trial court erroneously concluded that the express warranty contained in the original contract failed in its essential purpose.

The applicable rules follow.

[2] When, as here, issues are tried before the court sitting without a jury, the trial court sits as both judge and jury. Findings of fact so made, if supported by competent evidence, are as conclusive on appeal as a jury verdict. *McMichael v. Motors, Inc.,* 14 N.C. App. 441, 188 S.E. 2d 721 (1972). Further, it is presumed that a trial judge, when sitting as fact finder, is able to and does

sift through the evidence presented, considering only that which is competent, and discarding the rest. *Cf., State v. Sneed,* 14 N.C. App. 468, 188 S.E. 2d 537 (1972) (judge presumed to have considered only competent evidence during *voir dire* hearing).

We have conducted an extensive review of the briefs and records in this case and find that there was plenary competent evidence to support the trial court's findings, that those findings support its conclusions, and that the conclusions support the judgment. Although four (4) of the "findings" are more properly denominated conclusions of law, appellants were not prejudiced by that error since they, too, are based on facts which are supported by competent evidence.

Accordingly, we find no error in the appellants' trial and affirm the judgment below.

Affirmed.

Judges ARNOLD and PHILLIPS concur.