LAKE GASTON ESTATES PROPERTY OWNERS ASSOCIATION, INC.; GEORGE S. WELLS, AND WIFE, GAIL L. WELLS; AND HILBERT A. CARTER, AND WIFE, MARY P. CARTER, PETITIONERS v. THE COUNTY OF WARREN, A BODY POLITIC AND CORPORATE; AND FRESHWATER PEARL, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY, RESPONDENTS

No. COA07-140

(Filed 6 November 2007)

### 1. Deeds— restrictive covenants—void for vagueness

In an action arising from a proposal to build condominiums in an area that had been used for a boat ramp and lake access, the court's findings supported the conclusion that restrictive

covenants were void for vagueness and that the area was not subject to those restrictive covenants.

## 2. Deeds— restrictive covenants—void for vagueness—insufficient material to extrapolate meaning

In an action arising from a proposal to build condominiums in an area that had been used for a boat ramp and lake access, the trial court did not err by finding a provision in a restrictive covenant void for vagueness where the court had only the two words "Reserved Commercial" from which to extrapolate meaning.

## 3. Deeds— restrictive covenants—noxious and offensive uses—sewage treatment system

The trial court did not err by denying injunctive relief where respondent's development plan included a sewage treatment system and restrictive covenants prohibit noxious and offensive uses. While there is some common sense support for petitioner's contention, there is no evidence supporting a finding that the proposed sewage treatment drip system would be a noxious or offensive use.

## 4. Easements— relocation—no limiting language

The trial judge did not err by concluding that an easement with a boat ramp and lake access could be relocated from a reserved area to a new parcel. The language of the easement contains no restriction as to where the new right of way might be constructed.

Appeal by petitioners from judgment entered 23 July 2006 by Judge Donald W. Stephens in Warren County Superior Court. Heard in the Court of Appeals 12 September 2007.

*Currin & Dutra, LLP, by Lori A. Dutra, for plaintiff-appellants.*

*William T. Skinner, IV, for respondent-appellee.*

ELMORE, Judge.

Lake Gaston Estates subdivision (Lake Gaston Estates) is located on Lake Gaston in Warren County. When Lake Gaston Estates was created, the developers executed and recorded certain restrictive covenants and recorded a subdivision plat. The properties at issue here are comprised of lots B-33, B-34, B-35, B-36, and an area designated on the original plat as "Reserved" (the reserved area). The prop-

erties are located at the intersection of Thorough Fare (S.R. 1418) and Recreation Lane (S.R. 1414). Recreation Lane runs North-South along the shore of Lake Gaston. The properties in question are located on the strip of land between Recreation Lane and the beach. Thorough Fare runs East-West and intersects with Recreation Lane. It narrows to an asphalt and gravel road between Recreation Lane and the water. The land at the terminus of this asphalt and gravel road is the reserved area. Lots B-35 and B-36 lie to the south and north of Thorough Fare, respectively, and between Recreation Lane and the reserved area. Lots B-33 and B-34 lie to the south of of Lot B-35, but are divided from the reserved area by a strip of land owned by the Lake Gaston Estates Property Owners Association, Inc. (the Association) and used as a park (the park).

At the time the subdivision plat was recorded, lots B-33, B-34, B-35, and B-36 were designated "Reserved Commercial." Four other lots not at issue here were also designated "Reserved Commercial." With the exception of the reserved area and the park, all other "enumerated lots in the greater Lake Gaston Estates subdivision were expressly designated and restricted to single-family residential use only." However, when the County of Warren (the County) enacted a revised zoning ordinance in 1984 and 1985, lot B-35, lot B-36, and the reserved area were zoned as "Lakeside Business."

In 1988, the subdivision's developer granted a non-exclusive easement over the reserved area for the purpose of boat launching and lake access for Lake Gaston Estates residents and their guests (the easement). The Association built a concrete dock where the end of that easement meets the lakeshore. A gravel drive was also built along the easement, which residents use when they pull their boats down to the dock.

In 1996, the developer conveyed lot B-35, lot B-36, a portion of the park, and the reserved area as a composite to Ray W. Odom. The deed stated that these properties were subject to the restrictive covenants. Freshwater Pearl, LLC (respondent)[1] purchased these properties by deed dated 26 August 2002. Respondent also purchased lots B-33 and B-34 on that date.

Respondent then submitted an application for rezoning to the Warren County Board of Commissioners (the Board), with an accompanying development plan for construction of forty-eight multi-family

---

1. The County is also a respondent in this case, but our use of "respondent" in this opinion refers only to Freshwater Pearl, LLC.

or condominium units, parking areas, and a small package treatment sewer plant. Respondents planned to erect buildings across the easement and proposed moving the easement to another location. Respondent petitioned the Board to rezone 4.78 acres comprised of lots B-35 and B-36 and the reserved area from "Lakeside Business" to "Lakeside Residential." The Board granted the petition on 1 December 2003.

In response, the Association and several Lake Gaston Estates landowners (collectively, petitioners) filed a petition for declaratory judgment and injunctive relief on 16 February 2004. Petitioners sought, among other things, determinations regarding the validity of the zoning amendment and whether respondents could relocate the easement.

In a 21 July 2006 order, the superior court held that petitioners are entitled to use the easement "in accordance with the terms and provisions [in the Warren County Public Registry] and as further clarified" by conclusion of law No. 8. The court denied petitioners any other relief. This appeal followed.

[1] Petitioners first argue that the trial court erred in its conclusion of law No. 4 that the restrictive covenants governing Lake Gaston Estates are "void for vagueness and unenforceable as a matter of law relative to the properties of [respondent] and as applied to said properties of said Respondent, except as such common or universal portions thereof which could be applied to properties which are used for either commercial or residential purposes." Petitioners contend that, to the contrary, the covenants contain specific language restricting all lots not otherwise designated to single family residential use.

Petitioners also argue that, contrary to conclusion of law No. 7, the reserved area was expressly made subject to the covenants restricting all lots to single family residential uses when it was surveyed as a lot and sold by the developer in 1996. Conclusion of law No. 7 states, in relevant part:

There has been no showing, either by expression or clear and undisputed implication, that the developers of the Lake Gaston Estates subdivision intended that the "Reserved" area . . . and [lots B-35 and B-36] . . . [were] to be conveyed as a single lot which was to be restricted to single-family residential use.

We cannot agree with either strand of petitioners' argument.

When a judgment has been rendered in a non-jury trial, our standard of review is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary.

*Town of Green Level v. Alamance Cty.*, 184 N.C. App. 665, 668-69, 646 S.E.2d 851, 854 (2007) (citations and quotations omitted).

Petitioners assigned error only to finding of fact No. 24, and because they "failed to assign error to any of the trial court's [other] findings of fact, they are binding on appeal." *Langdon v. Langdon*, 183 N.C. App. 471, 475, 644 S.E.2d 600, 603 (2007) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). Conclusions of law Nos. 4 and 7 are supported by the following unchallenged findings of fact:

16. There are no restrictions in the foregoing covenants which forbid or prevent [respondent] from converting the use of its foregoing properties to residential use.

17. There are no provisions in the foregoing covenants which provide that if Respondent converted the use of its foregoing properties to residential use, then the same would become subject to the existing residential use limitations which are found in the covenants.

18. There are no provisions in the foregoing covenants which address and regulate or otherwise restrict any future development of the "Reserved" areas shown, designated and described on the [subdivision plat].

19. There are no provisions in the foregoing covenants which address and regulate or otherwise restrict any future development of the "Reserved Commercial" lots which are shown, designated and described on the [subdivision plat].

20. There are no provisions in the foregoing covenants which either define or describe the term "lot" as said term is found in Paragraph 1 (One) of Article III of said covenants.

21. There are no provisions or information in or on the [subdivision plat] which either define or describe any definition or application of the terms "Reserved" and "Reserved Commercial" as the same appear on the foregoing recorded survey and plat and as

further applied to the foregoing properties of Respondent Freshwater Pearl, LLC.

22. The developers did not delineate, enumerate, designate or otherwise define the "Reserved" area as a lot in the 1996 deed to Ray W. Odom . . . .

23. The developers did not delineate, enumerate, designate or define the "Reserved" area as a lot restricted for single-family residential use only in the foregoing 1996 deed to Ray W. Odom . . . .

Accordingly, we hold that the trial court's conclusions (1) that the restrictive covenants were void for vagueness as they relate to respondent's properties, and (2) that the reserved area is not subject to the restrictive covenants, are both supported by the findings of fact.

[2] Petitioners next argue that the trial court erred by ruling that the designation of "Reserved Commercial" on lots B-33 through B-36 on the plat was void for vagueness because the subdivision plat clearly restricted those lots to "Reserved Commercial" and respondent's deed contained the express reservation. Again, our task is to determine whether the trial court's conclusions of law are supported by the findings of fact, and whether the findings of fact are supported by competent evidence.

The deed conveying the lots in question to respondent states that the conveyance is subject to:

3. That declaration as the same appears in said Registry in Book 227, Page 670.

4. The designation of Lots B-35 and B-36 on said plat recorded in Plat book 9, Page 70 as "Reserved Commercial."

The declaration states that "[t]he following restrictions and covenants shall apply to the property known as Lake Gaston Estates as designated on the plat . . . . These restrictions and covenants are to run with the land and shall be binding on all parties and persons claiming under them . . . ." The first restriction states that "[a]ll lots in the tract, except those otherwise designated on the recorded plat, shall be used for residential purposes only. No building shall be erected . . . on any lot other than one detached single family dwelling not to exceed two stories in height, exclusive of basement."

As stated above, the trial judge found as fact that the restrictive covenants contained no provisions that "address and regulate or otherwise restrict any future development of the 'Reserved Commercial' lots . . . ." He also found as fact that the recorded survey and plat contain no provisions or information that "define or describe any definition or application of the terms 'Reserved' and 'Reserved Commercial' . . . ." Petitioners did not assign error to these findings and thus they are verities on appeal. *Langdon*, 183 N.C. App. at 475, 644 S.E.2d at 603.

Petitioners argue that the declaration and the plat's designation of the lots as "Reserved Commercial" without further definition do not support a conclusion that the designation is void for vagueness because the term can be "understood by common sense and common usage." Petitioners offer several cases in support of this contention, but none answer the question at hand: Is the designation of certain lots as "Reserved Commercial," without further explanation, too vague to be enforceable?

There is little case law addressing the question of what language in a restrictive covenant is void for vagueness, and what language is not. The only case in which we specifically addressed this question is *Latham v. Taylor*, 10 N.C. App. 268, 178 S.E.2d 122 (1970). We concluded that a restrictive covenant which provided that a piece of property

> shall not be used for any manufacturing, industrial or apartment house purposes, its use being restricted to residential and/or recreational and educational purposes for children and adults to be carried on in connection with and as a part of a camp for children or adults operated as a business enterprise

was not void for vagueness. *Id.* at 269-70, 178 S.E.2d at 123-24. *Latham* is of limited use here because the language of its restrictive covenant is so much more specific than the language in the restrictive covenant at hand, which consists only of the words "Reserved Commercial."

It appears that we have not dealt with this "void for vagueness" question because our courts usually supply a definition for an undefined term in a covenant rather than void the entire covenant. For example, this Court recently supplied a definition for the word "extension": "The Declaration does not define the term 'extension'; rather '[s]ound judicial construction' of the covenant requires the

Court to give effect to this clause 'according to the natural meaning of the words.' " *Terres Bend Homeowners Ass'n v. Overcash,* 185, N.C. App. 45, 54, 647 S.E.2d 465, —— (2007) (quoting *Hobby & Son v. Family Homes,* 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981)).

In *Hobby,* our Supreme court set forth the following principles governing enforcement of restrictive covenants:

> We begin our analysis of this case with a fundamental premise of the law of real property. While the intentions of the parties to restrictive covenants ordinarily control the construction of the covenants, such covenants are not favored by the law, and they will be strictly construed to the end that *all ambiguities will be resolved in favor of the unrestrained use of land.* The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent. Even so, we pause to recognize that *clearly and narrowly drawn restrictive covenants* may be employed in such a way that the legitimate objectives of a development scheme may be achieved.

*Hobby,* 302 N.C. at 70-71, 274 S.E.2d at 179 (emphases added) (internal citations omitted). In this case, the restriction is not "clearly and narrowly drawn" and both the meaning and application of the words "Reserved Commercial" are ambiguous. It is therefore necessary to resolve the ambiguity "in favor of the unrestrained use of land." *Id.* Although courts may supply meaning to ambiguous terms, here the trial court had only two words from which to extrapolate meaning. Given this paucity of original material, the trial court did not err by finding the provision void for vagueness.

[3] Petitioners next argue that the trial judge erred by denying injunctive relief when respondent's development plan includes a sewage treatment system and the restrictive covenants prohibit noxious and offensive uses. Specifically, the restrictive covenants state, "No noxious or offensive activity shall be carried on upon any lot nor shall anything be done thereon which may become an annoyance or nuisance to the neighborhood." Petitioners assert that "[t]he use of the entirety of lots 33 and 34, and arguably lot 35 for sewage treatment use is patently a noxious or offensive use."

The trial judge did not specifically address the issue of the proposed sewage plant in his order, but his general denial of injunctive

relief encompasses petitioners' request for a declaration on the inclusion of the sewage treatment system. Although there is some common sense support for petitioners' contention that the proposed sewage plant is a "patently" noxious or offensive activity, petitioners offer no other support for their conclusion. Trial testimony clarifies that the sewage treatment system is a "drip system with ponds" and not a "plant." William Sparkman, a member-manager of Freshwater Pearl, LLC, testified that respondent had hired an engineer to determine the best way to address the proposed development's waste water. The engineer proposed a "drip system which was pre-treated that would filter into specifically located ponds to maintain [the waste] on the area." During the 5 August 2003 Board minutes, Sparkman stated that pollution studies would be addressed during the septic permitting phase.

There is no evidence supporting a finding that the proposed drip system would be a noxious or offensive use of the land. Indeed, the other Lake Gaston Estates homeowners have septic systems because the development is not connected to the county water and sewer lines. A septic system may give rise to unpleasant odors and unwelcome overflow of its own.

It appears that these issues may be raised and addressed during the septic permitting phase. It would be premature to grant an injunction preventing respondents from going forward with their sewage treatment system at this time.

**[4]** In their final argument, petitioners aver that the trial judge erred by concluding that the easement could be relocated from the reserved area to a new parcel of land. The easement reads, in relevant part, as follows:

This easement shall be a perpetual, non-exclusive right of way 60 feet in width and shall be used by the homeowners and their guests for the purposes of boat launching and access to the waters of Lake Gaston. The easeemnt [sic] shall be situated at a place and location on said reserved area at the discretion of the parties of the first part, their successors and assigns.

Subject however to the following:

The party of the first part, it successors or assigns, reserve the right to relocate and to discontinue the use of a certain access roadway and boat ramp situated on the above described property. However, upon the discontinuance of these said improvements it

is agreed that the party of the first part, its successors or assigns, shall simultaneously with the relocation or discontinuance of existing improvements cause to be constructed an access roadway and boat ramp at no expense to the parties of the second part.

Respondents planned to move the easement so that it crosses a different parcel of land and to construct a new access roadway and boat ramp at its own expense. The trial judge, in finding of fact No. 24, stated that

the developers, for themselves and their successors or assigns, reserved the right to relocate and to discontinue the use of a certain access roadway and boat ramp situated on the foregoing property. The foregoing easement further provided that should the foregoing easement and boat ramp access be relocated or discontinued, then the developers covenanted and agreed that a new access roadway and boat ramp would be constructed at no expense to Petitioners.

The judge, in conclusion of law No. 8, then stated that

Respondent Freshwater Pearl, LLC is entitled, in its sole discretion, to relocate or discontinue said easement relative to the property described in the foregoing easement in accordance with the terms and provisions thereof; PROVIDED, HOWEVER, that should said Respondent either relocate or discontinue said easement, then said Respondent shall construct, or cause to be constructed, an access roadway and boat ramp either in a different location on the foregoing property subject to the foregoing easement, or construct, or cause to be constructed, an access roadway and boat ramp *on a separate tract or parcel of property* which can be used therefor at no cost to Petitioners.

(Emphasis added).

Petitioners argue that "[t]he easement provides that the grantors desired to convey to the Association 'the right to use a *certain reserved area* for access to the waters of Lake Gaston,' " and that the easement "shall 'be situated at a place and location on said *reserved area*' at the discretion of the grantors." We agree with petitioners' initial reasoning about the easement, but cannot follow that reasoning to petitioners' ultimate conclusion.

The easement clearly states that the right-of-way must initially be located within the bounds of the reserved area. However, its qualify-

ing language does not state that if the right-of-way is relocated it must be relocated within the bounds of the reserved area. It states instead that the developer or its successor, respondent, may relocate and discontinue the use of the "access roadway and boat ramp situated on the above described property." Upon such relocation or discontinuance, respondent must "cause to be constructed an access roadway and boat ramp at no expense to" the Association. The language of the easement contains no restriction as to where the new right-of-way must be constructed if the old one is relocated, and we decline to read such a restriction into the document.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

Judges McGEE and STEELMAN concur.