CHASE DEVELOPMENT GROUP, PTIA LIMITED PARTNERSHIP; CHASE GROUP, INC., D/B/A CHASE GROUP-MARYLAND; JOHN JORGENSON; AND MICHAEL MELLOR, PLAINTIFFS v. FISHER, CLINARD & CORNWELL, PLLC, AND ROBERT LEFKOWITZ, DEFENDANTS

No. COA09-1521

(Filed 19 April 2011)

**1. Negligence— professional negligence—findings of fact— burden of proof—denial of involuntary dismissal motion**

The trial court did not err in a professional negligence case by denying defendants' motion for involuntary dismissal. The key findings of fact challenged by defendants were supported by evidence in the record and the court applied the correct burden of proof to the critical finding of fact.

CHASE DEV. GRP. v. FISHER, CLINARD & CORNWELL, PLLC

[211 N.C. App. 295 (2011)]

## 2. Statutes of Limitation and Repose— professional negligence—claims not barred

The trial court did not err in a professional negligence case by denying defendants' motion for involuntary dismissal. The trial court correctly determined that a portion of plaintiffs' claims were not barred by the applicable statute of limitations.

## 3. Statutes of Limitation and Repose— professional negligence—claims barred

The trial court in a professional negligence case did not err by concluding that a portion of plaintiffs' claims were barred by the applicable statute of limitations. The trial court's findings of fact supported its conclusions of law that claims against defendants for legal malpractice during the period October 2003 through April 2004 were barred by the three-year statute of limitations; individual defendant's renewed representation on the same matter as he previously advised did not halt the running of the statute; and when defendants did not represent plaintiffs individually, there was no reasonable third-party reliance.

## 4. Attorney Fees— professional negligence—findings of fact —supported award

The trial court did not err in a professional negligence case by not including an additional $62,202.84 over and above the amount ordered by the trial court that was paid by plaintiffs individually as part of a $300,000 settlement. The findings supported the amount of the trial court's award to plaintiffs individually.

Appeals by plaintiffs and defendants from judgment filed 28 May 2009 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 26 May 2010.

*Jackson & McGee, LLP, by Gary W. Jackson and Sam McGee, for plaintiffs.*

*Poyner Spruill LLP, by Cynthia L. Van Horne, E. Fitzgerald Parnell, III, and Andrew H. Erteschik, for defendants.*

STEELMAN, Judge.

The trial court's findings of fact support its denial of defendants' motion for involuntary dismissal. When the defendants' last act of negligence occurred is a factual issue to be decided by the trial court. The trial court's findings of fact on this issue support its ruling that a

portion of Jorgenson and Mellor's claims were barred by the three-year statute of limitations, and that a portion of these claims were not barred. It was for the trial court to determine what amount of plaintiffs' damages were proximately caused by the negligence of defendants.

## I. Factual and Procedural Background[1]

In 1997, Chase Development Group–PTIA, Limited Partnership ("Chase NC") acquired a tract of real property located in Guilford County, North Carolina, upon which it operated a Biltmore Suites Hotel ("the Property"). Chase Group, Inc. d/b/a Chase Group–Maryland ("Chase MD") was the general partner of Chase NC. John Jorgenson ("Jorgenson") was the Vice-President of Chase MD. Michael Mellor ("Mellor") was the President of Chase MD. Jorgenson and Mellor were the beneficial owners of Chase NC and Chase MD.

In August of 1999, Chase NC entered into a loan agreement with Bank of America, N.A. ("Lender"). The loan was evidenced by a note and secured by a deed of trust on the Property, an assignment of leases and rents, a security agreement, and a fixture filing. Jorgenson and Mellor were designated as "Borrower Principals" under the loan agreement. They did not personally guarantee the repayment of the loan. However, the loan agreement contained certain "recourse covenants" which triggered the personal liability of Jorgenson and Mellor. Specifically, paragraph 8(b) provided that Chase NC, Jorgenson, and Mellor were jointly and severally liable for "the Lender's incurrence of or obligation to pay attorney's fees, costs, and expenses in any bankruptcy, receivership or similar case filed by or against the Borrower or any Borrower Principal. . . ." One of the recourse covenants, set forth in Section 5.4(b) of the loan, also contained a prohibition against Chase NC procuring any other financing on the Property without Lender's prior written consent.

On 24 January 2002, Chase NC established a line of credit with First Union National Bank ("Credit Line"). Jorgenson and Mellor steadfastly maintained that the Lender had full knowledge of the Credit Line.

Prior to 2003, the Lender sold the note to an unidentified entity ("the Note Holder"). The loan was serviced and administered by GMAC Commercial Mortgage Corporation ("GMAC"). Following the events of 11 September 2001, the occupancy rates for the Property

---

1. The factual background is from the findings of fact contained in the trial court's final judgment of 28 May 2009.

dropped. In early 2003, Chase NC stopped making payments on the loan. Jorgenson and Mellor entered into negotiations with Allan Hanson ("Hanson") of GMAC, the objective of which was to resolve the loan default while retaining the Property. There were discussions of Chase NC tendering a deed in lieu of foreclosure to the Note Holder in exchange for a full release of liability for Chase NC, Jorgenson, and Mellor. GMAC and the Note Holder would have accepted such a settlement in the fall of 2003.

In October 2003, when it appeared that it could not reach an agreement with Hanson that would allow it to keep the Property, Chase NC consulted with the law firm of Fisher, Clinard & Cornwell, PLLC ("Fisher Clinard") and specifically with Robert Lefkowitz ("Lefkowitz") (collectively "defendants"), an expert in bankruptcy law. Fisher Clinard commenced representation of Chase NC with respect to its default under the loan. Lefkowitz advised Chase NC through Jorgenson and Mellor not to tender a deed in lieu of foreclosure, but to keep its options open. At this point, Jorgenson and Mellor reasonably believed that Fisher Clinard represented them individually as well as Chase NC. Lefkowitz did not discuss with Jorgenson and Mellor the possibility of their personal liability for attorneys' fees if foreclosure, receivership, or bankruptcy was initiated.

Based upon advice of defendants, Chase NC elected not to tender a deed in lieu of foreclosure, and communicated this decision to Hanson. On 7 November 2003, GMAC filed suit in the Superior Court of Guilford County ("state court action") against Chase NC. As a result of this suit a receiver was appointed for Chase NC, who shortly thereafter took over the operation of the Property. On 22 December 2003, GMAC filed an amended complaint, seeking to recover from Jorgenson and Mellor as "Borrower Principals" all amounts due under the note and loan documents, including attorneys' fees. The amended complaint asserted that the Credit Line was a violation of the recourse covenant.

Lefkowitz advised Jorgenson and Mellor that GMAC did not have a strong argument for recovery of attorneys' fees from them personally. Lefkowitz advised counsel for GMAC that he did not represent Jorgenson or Mellor and declined to accept service on their behalf. Negotiations for resolution of the dispute continued between counsel and between Jorgenson, Mellor, and Hanson.

Immediately prior to a hearing on GMAC's motion for a preliminary injunction in the state court action, Fisher Clinard filed a peti-

tion under Chapter 11 of the United States Bankruptcy Code on behalf of Chase NC, on 15 April 2004. With the filing of the bankruptcy it was clear to all parties that Fisher Clinard only represented Chase NC, and did not represent Jorgenson or Mellor individually. In June of 2004, a settlement proposal that would have allowed Chase NC to retain the Property was rejected by the Note Holder. On 19 January 2005, the Bankruptcy Court refused to approve Chase NC's plan of reorganization. On 22 April 2005, the Bankruptcy Court dismissed the bankruptcy petition. GMAC then instituted foreclosure on the Property.

On 9 May 2005, Lefkowitz filed answer in the state court action to GMAC's amended complaint on behalf of Jorgenson and Mellor, individually. On 14 November 2005, GMAC filed a motion for partial summary judgment seeking a ruling on Jorgenson and Mellor's personal liability for GMAC's attorneys' fees. On 17 January 2006, the trial court granted GMAC's motion and awarded GMAC accrued attorneys' fees against Jorgenson and Mellor of $237,797.16. Lefkowitz recommended appeal of this order. Jorgenson and Mellor sought other legal advice and hired Andrew Chamberlin to represent them.

Jorgenson and Mellor negotiated a settlement with GMAC and the Note Holder. Under the terms of the settlement, Chase NC relinquished title to the Property; Jorgenson and Mellor paid GMAC $300,000 (which included the $237,797.16 previously awarded by the trial court); and the Note Holder released Chase NC, Jorgenson, and Mellor from any further liability.

On 6 November 2007, Chase NC, Chase MD, Jorgenson, and Mellor ("plaintiffs") filed this action against defendants seeking compensatory damages for negligence arising out of the representation of plaintiffs. Defendants pled the statute of limitations in bar of plaintiffs' claims. The case was heard before the trial court sitting without a jury. A judgment containing detailed findings of fact and conclusions of law was entered on 28 May 2009.

The judgment found that defendants had breached the applicable standard of care, and that Chase NC was entitled to recover of defendants the sum of $50,000, the amount paid to defendants in fees and costs. As to Jorgenson and Mellor, the court found that there were two periods of legal representation by defendants: (1) from October 2003 until 15 April 2004 (the date of filing bankruptcy on behalf of Chase NC); and (2) from the dismissal of the bankruptcy petition until the dismissal of the state court case (14 March 2006). As to the first period of representation, the trial court held that the claims of

Jorgenson and Mellor were barred by the three-year statute of limitations. As to the second period of representation, the trial court awarded damages to Jorgenson and Mellor of $48,720.16. Costs and interest from the date of filing the lawsuit were also awarded to plaintiffs.

From the judgment of the trial court, both plaintiffs and defendants appeal.

## II. Standard of Review

"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). The trial court's findings of fact are conclusive on appeal if supported by competent evidence. *Finch v. Wachovia Bank & Tr. Co.*, 156 N.C. App. 343, 347, 577 S.E.2d 306, 308-09 (2003) (quotation omitted). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 26, 265 S.E.2d 123, 127 (1980) (citation omitted).

## III. Appeal of Defendants

## A. Sufficiency of the Evidence

[1] In their first argument, defendants contend that the trial court erred in denying their motion for a directed verdict. We disagree.

This case was tried before a judge, sitting without a jury. A motion for directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure was not the appropriate mechanism to challenge the sufficiency of plaintiffs' evidence. Rather, the correct motion was one for involuntary dismissal pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure that based " 'upon the facts and the law the plaintiff has shown no right to relief.' " *Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 799-800 (1999) (quoting *Kelly v. Harvester Co.*, 278 N.C. 153, 159, 179 S.E.2d 396, 398 (1971)).

> The test of whether dismissal is proper under Rule 41(b) differs from the test of whether dismissal is proper for directed verdict under Rule 50(a). *Neff v. Coach Co.*, 16 N.C. App. 466, 470, 192 S.E.2d 587, 590 (1972). On a motion to dismiss pursuant to Rule 41(b), the trial court is not to take the evidence in the light most favorable to plaintiff. *Dealers Specialties, Inc. v. Housing Services*,

305 N.C. 633, 640, 291 S.E.2d 137, 141 (1982). Instead, "the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him." *Id.* The trial court must pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them. *Bridge Co. v. Highway Comm.*, 30 N.C. App. 535, 544, 227 S.E.2d 648, 653-54 (1976).

A dismissal under Rule 41(b) should be granted if the plaintiff has shown no right to relief or if the plaintiff has made out a colorable claim but the court nevertheless determines as the trier of fact that the defendant is entitled to judgment on the merits. *Ayden Tractors v. Gaskins*, 61 N.C. App. 654, 660, 301 S.E.2d 523, 527, *disc. review denied*, 309 N.C. 319, 307 S.E.2d 162 (1983).

*Hill,* 135 N.C. App. at 517, 520 S.E.2d at 800.

Given the nature of appellate review of non-jury cases set forth above, our review is essentially whether there was evidence to support the trial court's findings of fact. We treat defendants' motion to dismiss as a motion for involuntary dismissal pursuant to Rule 41(b), and review the evidence in the record to determine whether it supports the key findings of fact challenged by defendants on appeal.

The trial court found that:

20. In the fall of 2003, GMAC and the Note Holder would have accepted a deed in lieu of foreclosure from Chase-NC and would have given Chase-NC, Mr. Mellor, and Mr. Jorgenson a release in exchange. This deed in lieu of foreclosure would have entailed a relinquishment of the property by Chase-NC in exchange for a full release of all liability for Chase-NC, Mr. Mellor, and Mr. Jorgenson.

. . . .

71. $300,000.00 was paid to GMAC by Mr. Mellor or Mr. Jorgenson personally.

72. The settlement agreement required the approval of the Note Holder. The Note Holder approved the settlement.

73. This settlement was materially the same as was offered in October of 2003, in that the property was relinquished in exchange for a full release of all liability, except that the Plaintiffs additionally reimbursed GMAC for its fees and

expenses incurred in the receivership, bankruptcy and foreclosure, largely after October 2003.

74. The dispute could have been resolved in October 2003 for a deed in lieu of foreclosure with a full release of all plaintiffs. The circumstantial evidence indicates that it more likely than not thereafter could have been resolved at almost any point for a deed in lieu of foreclosure or an uncontested foreclosure with a full release of all plaintiffs if plaintiffs paid GMAC's attorneys' fees incurred to date, and the Court so finds. Had the Plaintiffs been adequately advised, it is more likely than not that they would have chosen to resolve the case on those terms rather than pursuing the course recommended by Mr. Lefkowitz, and the Court so finds.

Defendants argue that while there was discussion of Chase NC tendering a deed in lieu of foreclosure in the fall of 2003, that it was mere speculation that the Note Holder would have accepted a settlement on that basis. Any settlement proposal would have to have been agreed upon among Jorgenson, Mellor, and Hanson. It then would have to be submitted and approved by GMAC's investment committee. Once these approvals were attained, it would then have been submitted to the Note Holder for final approval. Defendants assert that since none of these approvals were actually obtained, whether the Note Holder would have approved such a settlement was pure speculation. They also point to the fact that the Note Holder rejected a settlement recommended by GMAC during the pendency of the bankruptcy.

We note that in a non-jury trial, the judge also assumes the role of the jury. The judge determines the credibility of the witnesses and other evidence, and also determines the weight to be given to each piece of evidence. *Laughter v. Lambert*, 11 N.C. App. 133, 136, 180 S.E.2d 450, 452 (1971). On appeal, if there is evidence in the record to support a finding of fact, it is binding upon the appellate court. *Lake Gaston Estates Prop. Owners Ass'n v. County of Warren*, 186 N.C. App. 606, 610, 652 S.E.2d 671, 673 (2007) (quotation omitted). In the instant case, there was sharply conflicting evidence. The fact that there was conflicting evidence does not mean that a particular finding of fact was not supported by the evidence.

Hanson testified that he was "99.9 percent certain" that his recommendation to resolve the dispute by a deed in lieu of foreclosure would have been accepted by the Note Holder in 2003. This resolu-

tion would have included a full release of Chase NC, Jorgenson, and Mellor from any additional liability. Jorgenson and Mellor would not have been exposed to liability for GMAC's attorneys' fees.

The court also found that the fall 2003 settlement and the final 2006 settlement were "materially the same" in that the Property was conveyed by Chase NC, and GMAC's fees and expenses were reimbursed by Jorgenson and Mellor. The fees and expenses were incurred by GMAC after October of 2003 as a result of the state court and federal bankruptcy case litigation. The settlement proposal that was rejected by the Note Holder did not include a conveyance by Chase NC of the Property. It is clear from the course of the negotiations that the Note Holder would not agree to any settlement that left the Property under the control of Chase NC. The rejection of the settlement by the Note Holder during the course of the bankruptcy supports the trial court's findings rather than contradicting them.

Finally, we note that this was a civil case. Therefore, the plaintiffs' burden of proof was "by the greater weight of the evidence." *Taylor v. Abernethy*, 174 N.C. App. 93, 103, 620 S.E.2d 242, 249 (2005), *cert. denied*, 360 N.C. 367, 630 S.E.2d 454 (2006). The trial court recognized this by finding that the evidence established that "more likely than not" a deed in lieu of foreclosure would have been accepted with a full release of all plaintiffs at any point after October 2003 if plaintiffs paid GMAC's attorneys' fees incurred to date. "More likely than not" is language that is frequently found in cases involving issues of medical causation. This language is used to explain the meaning of "by the greater weight of the evidence" to juries in the North Carolina Pattern Jury Instructions. N.C.P.I.—Civ. 101.10 ("The greater weight of the evidence does not refer to the quantity of the evidence, but rather to the quality and convincing force of the evidence. It means that you must be persuaded, considering all of the evidence, that the necessary facts are more likely than not to exist.").

We hold that the trial court's findings on this issue are supported by evidence in the record, and are thus binding upon this Court. The trial court applied the correct burden of proof as to this critical finding of fact. The trial court did not err in holding that plaintiffs were damaged by the negligence of defendants.

This argument is without merit.

### B. Statute of Limitations

**[2]** In their second argument, defendants contend that the trial court erred in denying their motion for a directed verdict when the last act

CHASE DEV. GRP. v. FISHER, CLINARD & CORNWELL, PLLC

[211 N.C. App. 295 (2011)]

of any alleged negligence occurred outside of the applicable statute of limitations. We disagree.

We treat defendants' motion for directed verdict as a motion for involuntary dismissal pursuant to Rule 41(b) of the Rules of Civil Procedure.

When a defendant pleads the statute of limitations in bar of a plaintiff's claim, the burden is upon the plaintiff to show that its suit was commenced within the appropriate time from the accrual of the cause of action. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). In this case, based upon allegations of professional negligence, the applicable statute of limitations was three years, pursuant to N.C. Gen. Stat. § 1-15(c) (2007).[2]

In a legal malpractice action, the limitations period begins to run when the last act of negligence occurs. *Hargett v. Holland*, 337 N.C. 651, 654, 447 S.E.2d 784, 787 (1994). Continuing representation of a client by an attorney following the last act of negligence does not extend the statute of limitations. *See Carlisle v. Keith*, 169 N.C. App. 674, 684, 614 S.E.2d 542, 549 (2005) (citation omitted). Defendants argue that the last acts which could have caused damage to the plaintiffs were in October 2003 when Lefkowitz advised Chase NC not to give a deed in lieu of foreclosure or in April of 2004 when Lefkowitz filed the bankruptcy petition on behalf of Chase NC, triggering the liability of Jorgenson and Mellor for attorneys' fees under the recourse covenants. This action was filed on 6 November 2007, more than three years following each of these dates.

However, the judgment of the trial court focused on defendants' representation following the dismissal of the bankruptcy petition. In conclusion of law 4(e), the trial court held:

> From April 22, 2005, until the dismissal of the state court action, Defendants failed to fully advise the Plaintiffs of the risk that Chase-NC and the individual plaintiffs would be found liable for some or all of GMAC's attorneys' fees. Defendants consistently downplayed the risk and very real possibility of such a ruling by the Court and failed to clearly explain that if Plaintiffs were ultimately unsuccessful on the issue, they could bear responsibility for GMAC's attorneys' fees in pursuing the issue.

---

2. None of the parties assert that the discovery provisions contained in N.C. Gen. Stat. § 1-15(c) are applicable to the facts of this case, and we do not discuss those provisions.

When the defendants' last act of negligence occurred is a factual issue to be determined by the trial court, sitting in the role of the jury. The above conclusion of law, and the underlying findings of fact show that the trial court found that defendants engaged in negligent conduct from 22 April 2005 through 15 March 2006. These findings are supported by evidence in the record, and are thus binding on this Court on appeal. *Lake,* 186 N.C. App. at 610, 652 S.E.2d at 673. Since plaintiffs' complaint was filed on 6 November 2007, this entire time period was within the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-15(c). The trial court correctly determined that a portion of plaintiffs' claims were not barred by the applicable statute of limitations.

This argument is without merit.

## IV. Appeal of Plaintiffs

### A. Statute of Limitations

[3] In their first argument, plaintiffs contend that the trial court erred in concluding that a portion of plaintiffs' claims were barred by the applicable statute of limitations. We disagree.

Our standard of review for this argument has been previously set forth in Section II.

This argument is directed towards defendants' representation of the individual plaintiffs, Jorgenson and Mellor. The trial court found as a fact and concluded that there were two separate and distinct periods of representation of Jorgenson and Mellor by defendants: the first running from October 2003 until the filing of the bankruptcy on behalf of Chase NC, and the second running from the dismissal of the bankruptcy petition until the dismissal of the state court action.

Plaintiffs set forth three arguments in support of their position that the trial court erred in applying the three-year statute of limitations to bar any claims arising out of the first period of representation.

### 1. Continuous Representation

Plaintiffs argue that defendants' representation of the individual plaintiffs was continuous, and that defendants' last act of negligence was within the three-year statute of limitations.

The evidence presented at trial was conflicting as to whether defendants represented Jorgenson and Mellor from October 2003 through April of 2004. Defendants asserted that they only represented

Chase NC during this time period. Jorgenson and Mellor asserted that defendants did represent them individually and gave them legal advice concerning their potential personal liability during this time period. The trial court found that when GMAC filed an amended complaint in the state court action adding Jorgenson and Mellor as individual defendants that Lefkowitz advised opposing counsel that he did not represent the individuals. A copy of this letter was sent to Jorgenson and Mellor. The trial court further found that: "Mr. Lefkowitz had clearly told them he could not represent them personally and also represent Chase NC in the bankruptcy . . . ." Following the dismissal of the bankruptcy in April of 2005, Lefkowitz filed answer in the state court action, on behalf of Jorgenson and Mellor, and advised them concerning whether GMAC could recover its attorneys' fees from them personally.

Each of these findings by the trial court is supported by evidence in the record and they are binding upon this Court. *Lake,* 186 N.C. App. at 610, 652 S.E.2d at 673. Whether there were two periods of legal representation of Jorgenson and Mellor or just one, was a factual determination to be made by the trial court. We hold that the trial court's findings of fact support its conclusion of law that any claims against defendants for legal malpractice during the period October 2003 through April of 2004 were barred by the three-year statute of limitations under N.C. Gen. Stat. § 1-15(c).

## 2. Halting of Statute of Limitations

Plaintiffs next contend that "Mr. Lefkowitz's renewed representation on the same matter as he previously advised, beginning on or about April 22, 2005, would have halted the running of the statute." Plaintiffs' cite no case authority for this creative proposition. We have found none, and find this argument to be without merit. N.C. R. App. P. 28(b)(6).

## 3. Duty to Non-Client Third-Parties

Finally, plaintiffs argue that even if Jorgenson and Mellor were not clients of defendants during the period of the bankruptcy, they were owed a duty by defendants under the rationale of *Leasing Corp. v. Miller,* 45 N.C. App. 400, 263 S.E.2d 313, *disc. review denied,* 300 N.C. 374, 267 S.E.2d 685 (1980). In *Miller,* this Court held that an attorney could be held liable for a defective title opinion that was furnished to and relied upon by a third-party non-client. The basis of this holding was that the express purpose of furnishing the title opinion

was to induce plaintiff to consummate a transaction with the client, and it was directly intended to affect plaintiff. *Id.* at 407, 263 S.E.2d at 318.

We first of all note that neither Jorgenson nor Mellor asserted a third-party beneficiary theory in their complaint, or at trial. "Failure to argue a theory of recovery below prohibits its assertion on appeal." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 131, 388 S.E.2d 538, 556 (1990) (citing *Plemmer v. Matthewson*, 281 N.C. 722, 725, 190 S.E.2d 204, 206 (1972)).

Even assuming *arguendo* that this argument was preserved for appellate review, it has no merit. The trial court's findings of fact make it abundantly clear that for the duration of the bankruptcy proceedings defendants did not represent Jorgenson or Mellor individually. This was documented in a number of communications by defendants, which were noted by the trial court. Where it was clear that defendants did not represent Jorgenson and Mellor individually, there can be no reasonable third-party reliance upon legal advice given solely to Chase NC. The trial court made no findings of fact that defendants provided any individual advice to Jorgenson or Mellor during the course of the bankruptcy.

### B. Damages

[4] In their second argument, plaintiffs contend in the alternative that the trial court erred in the amount of damages awarded to Jorgenson and Mellor, specifically not including the additional $62,202.84 over and above the amount ordered by the trial court that was paid by Jorgenson and Mellor as part of the $300,000 settlement. We disagree.

On 17 January 2006, the trial court awarded GMAC $237,797.16 in attorneys' fees against Jorgenson and Mellor. The 27 February 2006 settlement was for a total of $300,000, which included the amount awarded by the trial court, and an additional $62,202.84 "to cover the expected balance of GMAC's fees and costs." Plaintiffs contend that the $62,202.84 necessarily was for sums accrued after 30 September 2005, the last date for billings submitted to the trial court by GMAC in its motion. Since these damages accrued after 9 May 2005, plaintiffs argue that they should have been included in the award to Jorgenson and Mellor.

The trial court set out in detail how it computed the amount of attorneys' fees awarded to Jorgenson and Mellor as follows:

The Court came to this number by adding $29,367.00 (the amount Mr. Mellor and Mr. Jorgenson personally paid to the law firm of Ellis & Winters, LLP, for fees and costs related to the services of attorney Andrew Chamberlain [sic] in concluding the state court case), $14,790.30 (the amount Mr. Mellor and Mr. Jorgenson personally paid to Defendants for fees and costs incurred after May 9, 2005), and $4,563.16 (the amount of GMAC's attorneys' fees to Katten Muchin Rosenman LLP which were incurred after May 9, 2005).

The trial court went on to hold that "[a]ny other damages claimed by Mr. Mellor and Mr. Jorgenson are either barred by the statute of limitations or were not proximately caused by the Defendants' negligence."

We have previously discussed that Jorgenson and Mellor's claims for damages accruing prior to 15 April 2004 were barred by the three-year statute of limitations. In addition, the trial court held that throughout the dispute with GMAC, Jorgenson and Mellor consistently asserted that the line of credit was not obtained in violation of the recourse covenants. The trial court held that any negligent advice given by defendants to plaintiffs with respect to the personal liability of Jorgenson and Mellor resulting from the line of credit was "not the proximate cause of any damage to the Plaintiffs."

The amount of pecuniary damages is not presumed. The burden of proving such damages is upon the party claiming them to establish by evidence, (1) such facts as will furnish a basis for their assessment according to some definite and legal rule, and (2) that they proximately resulted from the wrongful act.

*Short v. Chapman*, 261 N.C. 674, 681, 136 S.E.2d 40, 46 (1964).

In a non-jury trial, the court sits in the stead of the jury and makes the factual determinations as to damages that the jury would have made. One of these determinations was whether plaintiffs had shown that the damages claimed were proximately caused by the negligence of defendants.

In the instant case, the trial court found and concluded that with the exception of $4,563.16, the costs and attorneys' fees paid by Jorgenson and Mellor to GMAC were not proximately caused by the negligence of defendants. We note that the finding of fact supporting the amount of $4,563.16 is not assigned as error by plaintiffs and is thus binding on this Court on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted).

This finding supports the amount of the trial court's award to Jorgenson and Mellor contained in its conclusions of law.

This argument is without merit.

## V. Conclusion

We hold that each of the challenged findings of fact of the trial court were supported by competent evidence in the record. These findings in turn, support the trial court's conclusions of law. The rulings of the trial court are affirmed.

AFFIRMED.

Judges STEPHENS and HUNTER, Jr., ROBERT N. concur.