STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-08-557
                                                  JAW CUM- 2/26/2010

CHRISTOPHER J. MCCORMICK,

         Plaintiff

v.                                                DECISION & ORDER


MICHAEL D. LACHANCE, et al.,

         Defendants.


## INTRODUCTION

This matter is before the court pursuant to M. R. Civ. P. 55 and 56 on Plaintiff's

(Plaintiff or McCormick) motion for summary judgment on its complaint against

Defendant Lachances (Lachance or Lachances) and Defendant Back Lot Owners[1] (Back

Lot Owners), seeking a declaratory judgment concerning the location and use of an

easement to the ocean. McCormick contends that as a matter of law the trail to the ocean

was relocated when a Recorded Plan describing the "Trail to Ocean" was filed and his

deed referencing the Recorded Plan was filed.

Also before the court is Defendant Back Lot Owners' cross-motion for summary

judgment against McCormick. Defendant Lachance has joined in that cross-motion. The

Back Lot Owners also seek a declaratory judgment, in pertinent parts of their

counterclaim, that the easement to the ocean has never been relocated. They also claim

common law nuisance by obstruction of the easement and trespass by unreasonable

interference with the easement.

---

[1] Defendants Samuel S. Scott, Nancy G. Reilly, Marjorie C. Adams, Stephen B. Bergson, Sally B.
Maynard, Elizabeth Sanborn Ventre, Sara L. Maynard and William D. Maynard are collectively
referred to as "the Back Lot Owners."

Because the court finds the summary judgment motions to be interrelated, the court will address the parties' arguments as a whole. The court finds the motions related because this is not simply a case establishing initially a trail to the ocean; rather, this case involves an easement that crosses two separately owned servient estates and that has, at least since, 1959 provided to the dominant estate owners a traveled path by foot and vehicle to the sea.

In 2001, a Dr. Crane[2] divided his land into two parcels. He first sold the northerly parcel to McCormick and then conveyed the southerly parcel to Lachance. The disputed easement crosses over both McCormick and Lachance's property.[3] This dispute was triggered by two unilateral actions taken by McCormick in 2008, one of the servient estate owners. He first constructed a fence and stonewall on his property that blockaded the travel path of an easement that the Back Lot Owners had been using, in substantially the same location, since 1959. The Back Lot Owners had used that traveled way to access the sea not only by foot, but also by vehicle to haul small watercraft and to transport people. McCormick also cleared an area along the southerly boundary of his property, which he contended was the only path by which the Back Lot Owners could legally cross his land on their way to the sea. Lachance[4] has not cleared the easement where it would fall on his land under McCormick's theory, leaving the Back Lot Owners with no actual path to the sea wide enough to allow passage by vehicle. In order to operate vehicles capable of hauling kayaks and other small watercraft, the Back Lot

---

[2] In 2000, Margaret Crane conveyed 49% of her property to her husband, Dr. Lawrence Crane. Dr. Crane had a power of attorney for Mrs. Crane. PSMF ¶ 5. Dr. and Mrs. Crane are referred to individually and collectively as Crane or Dr. Crane.

[3] At the parties' request, the court took a view of this property in the fall of 2009.

[4] Lachance contends that environmental laws and regulations prohibit the expansion of the easement onto his property without permitting that has not yet been obtained and that may not be obtained.

2

Owners require a traveled way that is at least 14'-wide. The width of McCormick's Trail to Ocean is 10 feet.

McCormick asserts that, as a matter of law, Dr. Crane relocated the Back Lot Owners' easements by (a) first, recording a plan that labels a particular area of what are now the McCormick and Lachances parcels as a "Trail to the Ocean (Easement)" (the Recorded Plan) and then (b) referencing the Recorded Plan in his deeds to both McCormick and the Lachances. Therefore, he argues he was free to erect a stonewall and a stockade fence consistent with the Recorded Plan. The Back Lot Owners respond that, as a matter of law, the McCormick and Lachance Deeds are ambiguous as to the parties' intent for the location of the Back Lot Owners' easements, and that extrinsic evidence supports the conclusion that Dr. Crane did not intend to relocate the existing traveled way by virtue of those deeds and the Recorded Plan. They further argue that Dr. Crane's deeds to McCormick and Lachance are ambiguous because they did not expressly address whether, how, or by whom the traveled way might be relocated following the delivery of those deeds. McCormick responds that there is no ambiguity in his deed; therefore, the court cannot consider parol evidence.

The Back Lot Owners, joined by Lachance, cross-move for summary judgment in their favor on the grounds that, as a matter of law, a servient estate owner who has reserved the unilateral right to relocate the easement may legally accomplish such a relocation only by (a) physically creating, on the face of the earth, a new easement that provides the same utility and function as the original easement and (b) paying the full costs of doing so. In this case, they contend that Dr. Crane did not do this.

3

The court points out that this dispute is complicated by the fact that Dr. Crane never constructed a replacement for the traveled way that tracks the Trail to the Ocean as described on the Recorded Plan.

## FACTUAL BACKGROUND

A.     Easement "to use the traveled way as it now exists"

The parties' parcels of land were once part of a tract of land locally known as the Blanchard Farm (the Farm). Back Lot Owners' Statement of Material Facts at ¶ 1 (BLO-SMF). The Farm extended from Route 88 to the shore of Casco Bay. BLO-SMF ¶¶ 3-4.

As of early 1959, the Farm was owned by Defendant Sally Blanchard Maynard's father, Dean Blanchard, and uncle, Sidney C. Blanchard (Blanchard). BLO-SMF ¶ 2. On April 24, 1959, Blanchard divided the Farm into two parcels. BLO-SMF ¶¶ 3-4. First, he conveyed to Sally Maynard and her then-husband that portion of the Farm abutting Route 88 and containing the Blanchard family farmhouse (the Maynard Parcel). BLO-SMF ¶ 3. Contemporaneously, he sold to Margaret M. Crane the remaining 10 acres of the Farm nearest the shore (the Crane Parcel). BLO-SMF ¶ 4.

The conveyance from Blanchard to the Maynard granted Maynard an express easement over the Crane Parcel. BLO-SMF ¶ 5. That easement provides:

> Also granting the right in common with Margaret M. Crane, her heirs and assigns, to use by foot or vehicle, the traveled way as it now exists from the Easterly bound of the land hereby conveyed across land conveyed this day to Margaret M. Crane to the sea. In the event said Margaret Crane her heirs or assigns re-establishes the location of said road and path the rights hereby granted to said Maynards shall be transferred to said new location.

(the Maynard Easement). Blanchard's deed to Crane expressly subjected the Crane Parcel to the Maynard Easement:

4

> This conveyance is made subject to the right granted to said Maynards their heirs and assigns to use the traveled way as it now exists from the Westerly bound of the land hereby conveyed across said land to the sea; provided, however, that if said traveled way is relocated by Margaret M. Crane, her heirs or assigns (which right is hereby granted) the rights granted to said Maynards shall apply to such new location.

BLO-SMF ¶ 6. Those conveyances thus created both the Maynard Easement over the existing traveled way or a new traveled way should Margaret Crane relocate it. There is no recorded plan that shows the location of "traveled way as it now exists." PSMF ¶ 18.[5]

Over the ensuing years, Maynard and Crane further divided their respective parcels. As of 2001, they had created a total of six lots. Sally Maynard conveyed out two parcels from the Maynard Parcel: one that by mesne conveyances is now owned by Defendant Elizabeth Sanborn Ventre, and another that is owned by Sally's three children, Defendants Sara L. Maynard, Todd W. Maynard and William B. Maynard. BLO-SMF ¶ 7. Sally Maynard's deeds to those outparcels expressly conveyed rights in the Maynard Easement; these conveyances all reference the "traveled way as it now exists" and the right to relocate reserved by Crane. BLO-SMF ¶ 8.

Beginning in 1966, Crane began subdividing the Crane Parcel. In 1966 she conveyed a lot to Barbara Stride that is now owned by Defendants Samuel G. Scott and Nancy G. Reilly; in 1973 she sold a lot to one Margaret B. Knox that is now owned by Defendant Stephen Bergson; and in 1986 she deeded a lot to Defendant Marjorie C. Adams and Charles F. Adams III that is now owned solely in Marjorie's name. BLO-SMF ¶¶ 9-15. Each of these Crane's conveyances granted an express easement over the Crane Parcel and referenced the "traveled way as it now exists" (Crane Easement) and the right to relocate reserved by Crane. PSMF ¶ 4.

---

[5] There are other plans that were not recorded that disclose the "traveled way as it now exists." That traveled way is not where the Trail to the Ocean is located on the Recorded Plan.

5

In all deeds establishing and conveying the Maynard/Crane Easements, the Back Lots constitute the "dominant estate;" that is, the parcels that are benefited by the Easements and to which the Easements are appurtenant. The land owned by Crane represents the "servient estate"; that is, the land burdened by and subject to the Easements. BLO-SMF ¶¶ 8, 15. Consequently, when Dr. Crane in 2001 subdivided the servient estate into what are now the McCormick and Lachance Parcels, the resulting parcels remained subject to the Maynard/Crane Easements as those easements were described in the deeds that originally created them. Dr. Crane had no power to alter the terms of easements that already had been conveyed to the Back Lot Owners. Thus, Dr. Crane's right to relocate the Maynard/Crane Easements is controlled by the language of his original deeds to the Back Lot Owners. As will be discussed below, reference in the McCormick and Lachance deeds to these original deeds and to the Recorded Plan creates, in part, ambiguity that permits the court to consider extrinsic evidence, particularly when attempting to apply the easement to the ground. Ambiguity is further created because Crane's reservation of the right to relocate is very general and does not address how the traveled way may be relocated.

C.     The Historical Location of the Traveled Way

In the first half of the twentieth century, the Blanchard family accessed the ocean by a path that ran approximately northerly of a ditch that had been called "Gendall's Gulley." BLO-SMF ¶ 24. When Blanchard divided the Farm in 1959, Crane rerouted the path slightly so that it crossed the gully over a bridge of wooden planks and ultimately reached a set of wooden stairs positioned on the shoreline to the south of the gulley. BLO-SMF ¶ 25. That location of the traveled way to the sea is depicted on the

6

1958 Jordan Plan. BLO-SMF ¶ 26. In 1986, the traveled way was in approximately the same location as is depicted on the 1958, 1966 and 1973 Jordan Plans. BLO-SMF ¶ 26.

By the mid-1990s, there were erosion problems along the existing path to the sea, and both the bridge and the stairs had become old and rickety. BLO-SMF ¶ 27. While reviewing the 1973 Jordan Plan, Dr. Crane and Mr. Adams jointly developed a plan to replace the bridge with a culvert and to build new stairs. BLO-SMF ¶ 28. Because Dr. Crane was beginning to consider dividing his land, Dr. Crane and Mr. Adams together decided that the lower half of the traveled path should be relocated to coincide more closely with the 20'-wide right-of-way area depicted on the 1973 Jordan Plan. *Id.*

Mr. Adams voluntarily installed the culvert under the bridge and, once the culvert was safely in place and graded over, removed the old bridge. BLO-SMF ¶ 29. Mr. Adams also tore down the old stairs and built new stairs closer to the edge of the gulley. *Id.* Dr. Crane was fully aware of Mr. Adams' work in relocating the traveled path. Dr. Crane helped Mr. Adams haul in gravel for the culvert. The culvert, path and stairs that Mr. Adams constructed in the mid-1990s remain in their original location today. BLO-SMF ¶ 30.

Thus, the "traveled way as it now exists" had a well-established location on the Crane Parcel. LSMF ¶¶ 7-9. That location is depicted on a plan prepared by Dr. Crane and described in a 2001 affidavit executed by Dr. Crane and filed with the Registry of Deeds before this litigation commenced. LSMF ¶ 7. Dr. Crane, who lived on the premises from 1959 until early in 2001 (LSMF ¶ 6), stated in his affidavit:

> The traveled way referred to in those conveyances is shown, generally, on the plan attached hereto as Exhibit A indicated by a dashed line labeled "trail to ocean" extending, generally, from the driveway serving the house shown on the plan (portions of the driveway being sometimes also known as Dean's Way) in an

easterly direction to the location of the stairs shown on the plan near the shore of Casco Bay.

LSMF ¶ 7. The plan referred to in Exhibit A shows that the "traveled way," referred to in all the Back Lot Owners' deeds, began at what had become the established road through the neighborhood, Dean's Way, and wound down across Crane's land to a set of stairs leading to a beach on Casco Bay in front of Crane's property. *Id.*

Crane never exercised his right to relocate the "traveled way" between 1959 and 2001, except as described above. LSMF ¶ 11. At all times the Back Lot Owners and Crane continued to travel across the Crane parcel to the shore by the existing traveled way as it had been established over many decades of continuous use. LSMF ¶ 13. Crane avers that he never intended to exercise the right to relocate. LSMF ¶ 12.[6] According to Crane, he never intended that the location of the "Trail to Ocean" as shown on the Plan vary from the location of the existing traveled way. LSMF ¶ 16. In the 2001 affidavit, Dr. Crane, acting as proxy for Margaret Crane, further averred, "At no time did Margaret Crane exercise her right to re-establish the location of the traveled way." LSMF ¶ 11.[7]

However, there is a factual dispute as to Crane's intent. The surveyor who prepared the Recorded Plan asserts that Crane made clear to him that he intended to

---

[6] The court concludes this statement was intended to foreclose a claim on a secondary path to the ocean that he had created and sometimes used. This secondary path is not relevant to the current dispute and no one claims any interest in this secondary path.

[7] Dr. Crane stated that although Margaret Crane never exercised her right to re-establish the location of the traveled way, such rights have been subsequently transferred to Christopher McCormick by deed recorded in Book 16597, Page 187 and Michael Lachance and Moira Lachance by deed recorded in Book 16817, Page 1. McCormick does not argue that these rights were transferred to him and Lachance. Rather, McCormick admits that Crane did not convey to him any rights relocate the easement. Plaintiff's Response to BLO-SMF ¶ 53 (failing to controvert).

8

relocate the easement as shown on the Recorded Plan.[8]  Plaintiff's Response to LSMF ¶¶ 7-17.  This disputed fact – that is Crane's intent – is not material to the court's analysis of the respective rights in this case.

B.    Record Title – The Servient Estate

Under the Town of Cumberland Zoning Ordinance, any lots subdivided from the Crane Parcel were termed "backlots," and were subject to special performance standards. One of those performance standards required any new backlot be accessible by a legal right-of-way that was at least 50' wide and that contained a traveled surface at least 20' wide.  BLO-SMF ¶ 36-37.  The legal right-of-way for Dean's Way was only 40' wide, and the width of its traveled surface was just 12' – too narrow to satisfy the Ordinance requirements for roads serving backlots.  BLO-SMF ¶ 37.  Because Dr. Crane did not want to burden his neighbors' lots with an additional 10' strip right-of-way and because he did not want to widen the traveled surface that had adequately served his and his neighbors' needs for decades, he applied to the Cumberland Board of Appeals for a variance that would allow his two proposed parcels to be accessed by means of Dean's Way in its present dimensions rather than in the wider dimensions required to meet the current performance standards.  BLO-SMF ¶ 37.  Dr. Crane filed with his variant request a plan entitled "Plan for a Private Way, Dean's Way, prepared for Dr. Lawrence Crane, 26 Dean's Way, Cumberland, Maine" prepared by Reed Surveying, Inc., updated through October 8, 2000.  BLO-SMF ¶ 40.

The Back Lot Owners did not object to Dr. Crane's plan to subdivide the Crane Parcel or his variance request.  BLO-SMF ¶ 38.  Some of the Back Lot Owners testified

---

[8] This may not amount to a factual dispute for it may be argued that from this statement repeated by the surveyor that Crane may have intended to relocate the easement, but intent is not the same as completing the relocation.

at the hearing in favor of Dr. Crane's variant request on the grounds that to widen Dean's Way would be both unnecessary and harmful to their interests. *Id.* At the hearing, there was no discussion about the Back Lot Owners' existing traveled way to the sea. BLO-SMF ¶ 39. The Board of Appeals granted Dr. Crane's request with respect to Dean's Way at the conclusion of the hearing. BLO-SMF ¶ 41.

The following summer, Dr. Crane obtained a permit for Dean's Way as a private way so that he could convey the northerly portion of his Parcel to McCormick. BLO-SMF ¶ 42. The Code Enforcement Officer issued the permit, and signed a plan entitled "Plan for Private Way, Dean's Way, prepared for Dr. Lawrence Crane, 26 Dean's Way, Cumberland, Maine" prepared by Reed Surveying, Inc. and dated September 17, 2000 and revised through 7/31/01." (the Recorded Plan). BLO-SMF ¶ 42-43.

On August 2, 2001, the Cranes contemporaneously conveyed the McCormick Parcel to McCormick (McCormick Deed) and recorded the Recorded Plan at the Cumberland County Registry of Deeds. BLO-SMF ¶¶ 43, 51. Crane conveyed the McCormick lot subject to the pre-exisiting easement in favor of the Back Lot Owners, described as follows:

> The above described premises are conveyed subject to . . . the rights of others in common with Grantee and the Grantors, their heirs and assigns, in and to a "Trail to Ocean" as shown on said Plan which is set forth in various deeds recorded in Cumberland County Registry of Deeds in Book 2467, Page 328, Book 2693, Page 82, Book 2515, Page 166, and Book 7613, Page 91, respectively.

PSMF ¶ 9. Having been created in 2001, the Plan had never been referenced in prior deeds. PSMF ¶ 2; LSMF ¶ 2. The "various deeds" referenced in the McCormick Deed refer only to the "traveled way as it now exists" not to a "Trail to Ocean as shown on the said Plan." *Id.* The "Trail to Ocean" as shown on the Plan shows a new 20-foot wide

10

easement (PSMF ¶ 7) for much of its length, outside of the "traveled way" as it existed in 2001 (LSMF ¶¶ 14-15). And, the "Trail to Ocean" referred to in the Recorded Plan did not exist on the face of the earth. The "traveled way" continued to be used for access to the ocean.

About two months after Crane conveyed the McCormick lot, on October 5, 2001, he conveyed his last piece of real estate at Dean's Way to Lachance. PSMF ¶ 10. The Lachance Deed also refers to the Back Lot Owners pre-existing easement in language identical to that found in the McCormick Deed. PSMF ¶ 11. At this time the "Trail to Ocean" as shown on the Recorded Plan remained impassable just as it had at the time of the conveyance to McCormick. LSMF ¶¶ 20-21; BLO-SMF ¶¶ 34, 63, 64, 65.

Except for a small overlap, (where the traveled way and the "Trail to Ocean" are in the same location), the "Trail to Ocean" is impassable by vehicle. LSMF ¶¶ 20-21. Trees, bushes and heavy vegetation fill the area where the "Trail to Ocean" was shown on the Plan. *Id.* Crane had taken no steps to clear the "Trail to Ocean". *Id.* The Trail to Ocean existed, if at all, on paper only. This fact is not disputed; it is only disputed whether this is sufficient to relocate the easement.

C.     McCormick's Wall and Stockade Fence

From 2001 through 2008, the Back Lot Owners and Lachance continued using without objection the existing traveled way referred to in their deeds. LSMF ¶ 28-29. In the summer of 2008 McCormick announced his intention to clear the "Trail to Ocean" shown on the Recorded Plan. LSMF ¶ 29. None of his neighbors consented. LSMF ¶ 31-32.

11

From the mid-1990s until the summer of 2008, the traveled way to the sea had been an approximately 14'-wide, mowed and cleared grassy path that provided safe passage for vehicles and pedestrians to reach the sea. BLO-SMF ¶ 34. However, in 2008, McCormick applied for a Permit-By-Rule under the Natural Resources Protection Act. The DEP granted the Permit-By-Rule. LSMF ¶ 35. In late summer 2008, after obtaining the Permit-By-Rule, McCormick hired a landscaping firm to cut trees and brush and clear the portion of the "Trail to Ocean" shown on the Recorded Plan falling on his side of the McCormick/Lachance boundary. He also built a stonewall and stockade fence, thereby cutting off access to the portion of the then existing traveled way lying westerly of the culvert. BLO-SMF ¶ 63; LSMF ¶¶ 37-38. These barriers prevent the defendants from reaching the ocean by vehicle. BLO-SMF ¶¶ 63-64.

On September 3, 2008 Lachance filed an appeal of the Permit-By –Rule to the Board of Environmental Protection. LSMF ¶ 39. McCormick filed this quiet title action against Lachance and the Back Lot Owners on or about September 24, 2008. McCormick also asked the Board to stay the appeal pending resolution of the quiet title action. LSMF ¶ 41. On November 6, 2008, the Board granted the stay on the grounds that the certain rights remained unsettled as between the parties, specifically, "the right of the permit holder and/or his predecessor-in-title to move the right-of-way, and whether the right-of-way was indeed moved, are decided by the court." LSMF ¶ 41.

## DISCUSSION

### I.     Summary Judgment Standard of Review.

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence, considered in the light most favorable

to the non-moving party, indicates that no genuine issue of material fact is in dispute."

*Blue Star Corp. v. CKF Props. LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270, 1276 (citing

*Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Stanley v. Hancock*

*County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174); *see also* M. R. Civ. P. 56. A

party wishing to avoid summary judgment must present a prima facie case for the claim

or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*,

2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. A genuine issue is raised "when sufficient

evidence requires a fact-finder to choose between competing versions of the truth at

trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact

that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84,

¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved

through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22.

The court notes that Rule 56(h) requires that a party opposing a motion for

summary judgment support any qualifications or denials of the moving party's statement

of material facts with record citations. Under Rule 56(h)(4), any statement that is not

properly controverted is admitted. If the opposing party chooses to include a statement of

additional facts, he or she must support those facts with record citations or the court may

disregard them. *See Levine v. Caly Corp.*, 2001 ME 77, ¶ 6, n. 5, 770 A.2d 653, 656.

The Law Court has clearly and succinctly spelled out the requirements for nonmoving

parties in summary judgment practice, stating:

> [t]o avoid a summary judgment, the nonmoving party must respond by filing (1) a
> memorandum of law in opposition to the motion for summary judgment; (2) a
> statement of material facts in opposition, with appropriate record references; and
> (3) copies of the corresponding record references.

*Id.* ¶ 6, 770 A.2d at 655-56. Finally, the court is not required to consider any additional facts that are offered by the nonmoving party if they are "improperly commingled" with the responsive paragraphs. *Doyle v. Dept. of Human Services*, 2003 ME 61, ¶ 11, 824 A.2d 48, 53.

In the case at bar, there are no material facts in dispute that affect this court's analysis; but, rather, there is a dispute over which facts the court may consider.

## II.    Relocation of the Easement

### A.    The McCormick and Lachance Deeds

McCormick contends that the McCormick and Lachance Deeds are unambiguous, rendering extrinsic evidence inadmissible.[9] McCormick argues that the only possible interpretation of the deeds is that Dr. Crane exercised his right to unilaterally relocate the Back Lot Owners' easement from the then existing traveled way to the area depicted on the Recorded Plan as "Trail to Ocean." McCormick does not argue that he relocated the easement; rather, he relies on Crane's conveyance to him, the reference in the deed to the Recorded Plan and the filing of those documents as the moment when Crane exercised his right to relocate the easement.

Construction of a deed is a question of law. *Windham Land Trust v. Jeffords*, 2009 ME 29, 967 A. 2d 690. In construing a deed, a court is to

---

[9] McCormick's argument that Lachance is estopped to deny the validity of the "Trail to the Ocean" by accepting their deed does not extend to the Back Lot Owners who were not parties to either the McCormick or Lachance Deeds. The Back Lot Owners cannot be estopped by any references in deeds to which they are strangers. *Thompson v. Thompson*, 19 Me. 235 (1841). The Maynard/Crane Easements were created in deeds granted in 1959, 1966, 1973, 1978 and 1986. Because the Back Lot Owners claim their easement rights under those recorded deeds, each of which precedes and is therefore paramount to the 2001 McCormick and Lachance Deeds, the Back Lot Owners are not bound by those deeds.

14

> look initially to the face of the deed for the controlling intent of the parties. . .
> However, if facts extrinsic to the deed reveal a latent ambiguity, [the court] must
> resort to standard rules of construction and circumstances surrounding the drafting
> of the deed to resolve it.

*Wallingford v. Kennedy*, 2000 ME 112, ¶ 15, 753 A. 2d 493 (internal citations omitted).

A deed is ambiguous if it contains language that "is reasonably susceptible of different interpretations." *Labonte v. Thurlow*, 2008 ME 60, 945 A. 2d 1237 (internal quotation omitted). A latent ambiguity is "an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground." *Wallingford*, 2002 ME 112, ¶ 15, n 7. If the deed is ambiguous, the court must look to extrinsic evidence to discern the parties' intent. *Crispin v. Town of Scarborough*, 1999 ME 112, ¶ 32, 736 A. 2d 241, 250; *Norton v. Town of Long Island*, 2005 ME 109, ¶¶ 27-28, 883 A. 2d 889, 898; *River Dale Ass'n v. Bloss*, 2006 ME 86, 901 A. 2d 809.

The conveyances from Crane to McCormick and Lachance were subject to the rights of each other and the pre-exisiting easement in favor of the Back Lot Owners. The language in McCormick's deed provides:

> The above-described premises conveyed subject to: . . . the rights of others in
> common with Grantee and Grantors, their heirs, and assigns, in and to a "Trail to
> Ocean" as shown on said Plan which is set forth in various deeds recorded in
> Cumberland County Registry of Deed in Book 2467, Page 328, Book 2693, Page
> 82, Book 3515, Page 166, and Book 7613, Page 91, respectively.

Here, there is a latent ambiguity because when an attempt is made to locate on the ground the Trail to Ocean, there is no existing Trail to Ocean. Reference to the other deeds adds to the uncertainty. Crane's deed to McCormick states that the McCormick Parcel is subject to others' easement rights to access the sea by the "Trail to the Ocean" shown on

15

the Recorded Plan. The McCormick Deed then recites that the rights of those "others" to use the "Trail to the Ocean" shown on the Recorded Plan are those described in Crane's prior recorded deeds to the Back Lot Owners. BLO-SMF ¶ 51. However, the "Trail to the Ocean" has not been included in the property descriptions for any of the lots previously conveyed either by Maynard or Crane, BLO-SMF ¶¶ 7, 9-15, and the existing traveled way is the only trail to the ocean.

The Recorded Plan further contributes to the ambiguity. The Recorded Plan was prepared to obtain approval for Dean's Way as a private way. The private way permit for Dean's Way made no reference to the Back Lot Owners existing traveled way to the sea. BLO-SMF ¶ 46. Dean's Way and the Maynard/Crane Easements cover distinct areas. Dean's Way now extends from Route 88 to the boundaries of the McCormick and Lachance Parcels. The Maynard/Crane Easements begin at the terminus of Dean's Way and continue to the sea. The Recorded Plan does not define any private easement rights except those in Dean's Way itself. BLO-SMF ¶¶ 45, 47. As of the time of the McCormick Deed, the location of the Back Lot Owners' traveled way to the sea had never been confined to the area identified on the Recorded Plan as "Trail to the Ocean." To the contrary, all the Back Lot Owners' deeds refer to "the traveled way as it now exists to the sea." BLO-SMF ¶¶ 5, 7, 9-15.

The Recorded Plan contributes to the ambiguity in other ways as well. Notes 1 through 3 to the Recorded Plan undermines the idea that Dr. Crane intended to affect the Back Lot Owners' right to use the existing traveled way to the sea. The General Notes on the Plan emphasize that the plan is incomplete and that it cannot be relied on for legal purposes. Most significantly, Note 3 contains the disclaimer: "Matters pertaining to title,

16

easements, restrictions, etc. should be referred to an attorney". BLO-SMF ¶¶ 45, 47. In Note 3 of the Plan Specific Notes, the Plan refers to the "various deeds establishing the location of Dean's Way" which refers to the Back Lot Owners' deeds; thereby requiring one to look to the other deeds in interpreting the Plan and McCormick's Deed. Finally, the only right of the Back Lots Owners expressly referred to in the Recorded Plan is their right to use "the existing water line that runs through the subject properties." Plan Specific Note 6. It belies common sense to conclude that the Recorded Plan would mention water line rights but omit any reference to the relocation of the easement from the existing traveled way to the "Trail to Ocean" if the intent of the Plan were to relocate the easement by virtue of the Recorded Plan. However, even if the Recorded Plan effectively relocated the "Trail to Ocean", this does not end the inquiry concerning the rights of the parties in this case.

Crane had the right to relocate the easement subject only to the rights of others to the trail to ocean. But how that right was to be exercised was not addressed in the deeds reserving the right to relocate. Under Maine law, he did not need the consent of the others to relocate the easement, but his right to relocate was limited to providing an easement "equally as convenient and beneficial" for the purpose of accessing the ocean. *Lyon v. Lea*, 84 Me. 254, 24 A. 844, 845 (1892). Even if Crane effectively relocated the easement in the Recorded Plan, because the easement now traveled over two servient estates as compared to one when owned by Crane, the new servient estate owners were limited in what they could do. First, neither could act unilaterally. They had to mutually agree to undertake the work necessary to apply the relocated easement to the ground; they had to mutually agree to construct the new easement. Second, they were limited by the

rights of the dominant estate owners as will be discussed below. To rule otherwise would undermine the rights of the dominant estate owners to an easement equally convenient and beneficial for the purposes of reaching the ocean.

B.    The Maynard/Crane Easements

1.    Dominant Estate Owners Rights

The deeds that created the Maynard/Crane Easements also created Crane's retained right to relocate those easements. Those deeds are the deeds from Blanchard to Maynard and the three outconveyances from Crane to Stride, Knox and Adams. These are the deeds the interpretation of which will determine the extent and scope of Crane's reserved right to relocate the Maynard and Crane Easements. Crane's right to relocate the Maynard Easement is expressed as follows:

> the right in common with Margaret M. Crane, her heirs and assigns to use by foot or vehicle, the traveled way as it now exists from the Easterly bound of the land hereby conveyed across land conveyed this day to Margaret M. Crane to the sea. In the event said Margaret M. Crane her heirs or assigns re-establishes the location of said road and path the rights hereby granted to said Maynards shall be transferred to a new location.

Blanchard to Maynard Deed.

> Crane's right to relocate the Crane Easement is expressed as follows:

> the right in common with the Grantor and others to use by foot or vehicle the traveled way as it now exists from the westerly boundary of the Grantor's land to sea. In the event the Grantor re-establishes the location of said road and path (which right is hereby reserved) the rights hereby granted shall be transferred to said new location, and the Grantee, her heirs and assigns, are granted a right-of-way from said road as relocated to the northerly boundary of the land hereby conveyed, such right-of-way to be of reasonable width and to be laid out to conform reasonably with the location of any entrance driveway on said land existing at the time of such relocation.

Crane to Stride Deed. The language of the Blanchard to Maynard Deed and the Crane

18

to Stride Deed generally describes Crane's right of relocation, but includes a specific guarantee that the dominant estate owner's rights in the existing traveled way shall be transferred to the new location.

2. Relocation Must be to a Reasonable and Equally Convenient Location

The original, physical location of an easement that was not given a specific location in the deed creating it "must be reasonable." *Rumill v. Robbins*, 77 Me. 193 (1885) ( the original location of an easement). The corollary to that principle is that if a grantor has reserved the right to relocate an easement, the grantor may move the easement only to a location that is itself reasonable. *Lyon v. Lea*, 84 Me. 254, 24 A. 844 (1892) (relocation of an easement).

In Maine, the express reservation of the right to relocate an easement carries with it a duty to ensure that any new location for the easement is "equally as convenient and beneficial for the purposes" as was the old location. *Lyon v. Lea*, 84 Me. 254, 24 A. 844, 845 (1892). In *Lyon*, the Law Court concluded that the any substituted traveled way must be "equally as convenient and beneficial for the purposes" of the dominant estate owner and as "capable of bearing the burden and dispensing the benefits" of the original location. *Id.* In *Lyon*, the grantee was "at liberty to establish new ways for the old, or, in other words, to establish other means by which the same kind and extent of convenience would be ensured as existed before." *Id.* In construing the reservation, the Law Court stated: "The implication derived from the wording of the reservation is that the grantee's wants might require a change or changes. Of course, any change or substitution must be just and reasonable according to the circumstances. *Each party has his rights.*" *Id.* (emphasis added). *Lyons* applies to the reservation in this case. Crane is free to relocate

the Maynard and Crane Easements for his own convenience, that is, to establish other means by which the same kind and extent of convenience to the ocean would be ensured to the Back Lot Owners as before. However, the new location of the Maynard/Crane Easements must be practicable and allow the Back Lot Owners the same benefits as the existing traveled way. The existing traveled way may not be discontinued until the new traveled way is fully constructed and usable. *Id.*

Nor may the easement be blocked:

> To obstruct permanently the only remaining way over the lot, across which the right of passage had been reserved was wrongful. If the defendant had a right to say where the travel should go, he had not a right to build a fence across the only path where passage was practicable.

*Bangs v. Parker*, 71 Me. 458 (1880). The Back Lot Owners' Deeds granted them the right to use the existing traveled way and the relocated easement. The clause in Crane's deeds in which he reserved the right to relocate the existing traveled way did not burden the Back Lot Owners with the obligation to construct the relocated traveled way or to pay anyone else to do this. To read Crane's deeds as providing that he could exercise his right to unilaterally relocate the traveled way in a manner that benefited himself but harmed the Back Lot Owners goes against Maine law.

The holding in *Lyon v. Lea* dictates that even if the owner of the servient estate has a unilateral right to relocate the easement, the owner may do so only in a manner that is reasonable and does not in any way inconvenient the dominant estate owners. The "Trail to Ocean" as built by McCormick is incapable of providing to the Back Lot Owners the benefit of vehicular access to the sea and imposes significant burdens on the Back Lot Owners. Therefore, the Back Lot Owners rights in the then exisiting traveled way remain fully operative.

20

The Maynard/Crane Easements can only be re-established by the actual construction and opening on the earth a way sufficient to provide the Back Lot Owners with safe passage to the sea by foot and vehicle. Crane's surveyor drafted, on paper, a layout of a relocation easement that did not, by itself, create an easement capable of providing the same kind and extent of convenience as the traveled way. Although *Lyon* does not explicitly state that the servient estate is responsible for establishing the new easement, it is clear in the recitation of the facts of the case that this is exactly what happened.[10]

In order for the area designated "Trail to Ocean" to provide the same benefits of foot and vehicular passage to the sea as the existing traveled way, Crane would have needed to construct a new path for safe passage by foot or vehicles. This was not done; therefore, the recording of the Recorded Plan did not terminate Lachance's or the Back Lot Owners' rights in the existing traveled way. Moreover, McCormick cannot relocate the existing traveled way by undertaking only half of the necessary work. Neither the Back Lot Owners nor Lachance, neither of whom wish to move the existing traveled way, are required to participate in McCormick's plan but their cooperation is essential if the Trail to the Ocean is to be re-established. McCormick's stonewall and stockade fence

---

[10] The Law Court has not ruled on this point since *Lyon*. However, this court's understanding of *Lyon* is consistent with the only other case located on this point, albeit from another jurisdiction. In *Lakes Gaston Estates Property Owners Association, Inc. v. County of Warren*, 652 S.E. 2d 671, 677, 186 N.C.App. 606, 616 (2007), the existence and approval of a subdivision plan on the servient estate showing a proposed new location for the subject access easement was not described by any party as being a completed relocation. Rather, the court found that the servient estate owner was merely entitled to relocate the road and that, should the servient owner one day do so, it must construct an access way that provides the same benefit as provided by the original location. *Lakes Gaston Estates* differs from the case at bar since in the former, the reservation more specifically addressed relocation of the access road and boat ramp to require the servient landowner to construct the replacement road at the servient owner's expense.

21

block Lachance and the Back Lot Owners' use of the existing traveled way to the ocean. Until such time as the easement is re-established, McCormick's blockage of the existing traveled way constitutes both a nuisance and a trespass.

C.     The Transfer of Relocation Rights

Even if Crane's relocation rights passed to McCormick and Lachance, their relocation rights are no greater than Crane's relocation rights. Neither the deed to Crane or Crane's subsequent deeds to the Back Lot Owners reserved to Crane the right to narrow the then-current width or relocate only half of the traveled way. As of 1959 the traveled way was 20' wide and under the Blanchard to Crane deed, Crane could not have narrowed the width of the traveled way to 10'. The Back Lot Owners are entitled at all times to either a 20' wide easement over the existing trail to the sea or a fully constructed, equally convenient 20'wide easement in another reasonable location. The easement must provide the Back Lot Owners the same utility for foot or vehicle, which includes hauling watercraft to and from the shore by vehicle, whether a tractor or a motor vehicle, or transporting people to the ocean. This can only be achieved if McCormick and Lachance act in concert.

D.     McCormick and Lachance's Right to the Easement to the Ocean

Lachance and McCormick share access to the easement. The language of the Crane to McCormick and Lachance Deeds conveys subject to the "rights of others in common with Grantee and Grantors, their heirs, and assigns, in and to a "Trail to Ocean." PSMF ¶ 9. By this language, McCormick and Lachance stand in the shoes of Grantor and Grantee and have rights in common with others granted a right in "Trail to Ocean." If McCormick and Lachance have rights in the Maynard/Crane Easements as dominant

estate owners, they cannot lawfully interfere with the Back Lot Owners' use of those easements to reach the sea. One co-owner of an easement may not interfere with any other owner's use of the easement. *Hultzen v. Witham*, 146 Me. 118, 127, 78 A. 2d 342, 346 (1951). As co-owners of an easement:

> No one co-owner can effectually block the opening, making or improving the common way by objecting to the particular mode or scheme adopted by the others. Each owner can (at least at his own expense as is proposed in this case) use the entire width of the way and can fit it all for use at his reasonable discretion, so long as he does not unreasonably impede any other co-owner in his use.

*Rotch v. Livingston*, 91 Me. 461, 476, 40 A. 426, 432 (1898).

## CONCLUSION

For the reasons stated above, the court GRANTS Back Lot Owners and Lachance's motion for summary judgment as against Plaintiff McCormick and DENIES McCormick's motion for summary judgment.

It is hereby DECLARED that neither the Maynard Easement nor the Crane Easement has ever been physically relocated on the face of the earth; that, in consequence, Plaintiff McCormick's property and Defendant Lachances' property remain subject to both the Maynard Easement and the Crane Easement as they existed on the face of the earth in the spring of 2008; that the Back Lot Owners each have together with McCormick and the Lachances the right to use by foot and vehicle the Maynard Easement and the Crane Easement as they existed on the face of the earth in the spring of 2008; and that by constructing a stone wall and stockade fence obstructing the Maynard Easement and the Crane Easement as they existed on the face of the earth in the spring of 2008, Plaintiff McCormick is liable to the Back Lot Owners for both nuisance and trespass. The

23

extent of the Back Lot Owners' entitlement to damages for nuisance and trespass shall be determined by the court after an evidentiary hearing.

The clerk shall incorporate this Decision and Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: February 26, 2010

Joyce A. Wheeler, Justice

24

CHRISTOPHER J MCCORMICK  - PLAINTIFF

Attorney for: CHRISTOPHER J MCCORMICK
PETER BRANN  - RETAINED 09/25/2008
BRANN & ISAACSON
184 MAINE STREET
PO BOX 3070
LEWISTON ME 04243-3070

Attorney for: CHRISTOPHER J MCCORMICK
ANNE TORREGROSSA  - RETAINED 10/08/2009
BRANN & ISAACSON
184 MAINE STREET
PO BOX 3070
LEWISTON ME 04243-3070


vs
MICHAEL D LACHANCE  - DEFENDANT
55 DEANS WAY,
CUMBERLAND FORESIDE ME 04110
Attorney for: MICHAEL D LACHANCE
SIGMUND D SCHUTZ  - RETAINED 10/14/2008
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

MOIRA LACHANCE  - DEFENDANT
55 DEANS WAY,
CUMBERLAND FORESIDE ME 04110
Attorney for: MOIRA LACHANCE
SIGMUND D SCHUTZ  - RETAINED 10/14/2008
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

SAMUEL S SCOTT  - DEFENDANT
29 DEANS WAY,
CUMBERLAND FORESIDE ME 04110
Attorney for: SAMUEL S SCOTT
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085

NANCY G REILLY  - DEFENDANT
29 DEANS WAY,
CUMBERLAND FORESIDE ME 04110

**DOCKET RECORD**

Attorney for: NANCY G REILLY
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


MARJORIE ADAMS  - DEFENDANT
35 DEANS WAY,
CUMBERLAND FORESIDE ME 04110
Attorney for: MARJORIE ADAMS
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


STEPHEN B BERGSON  - DEFENDANT
43 DEANS WAY,
CUMBERLAND FORESIDE ME 04110
Attorney for: STEPHEN B BERGSON
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


SALLY B MAYNARD  - DEFENDANT
77 FORESIDE ROAD,
CUMBERLAND FORESIDE ME 04110
Attorney for: SALLY B MAYNARD
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


ELIZABETH SANBORN VENTRE  - DEFENDANT
19 DEANS WAY,
CUMBERLAND FORESIDE ME 04110
Attorney for: ELIZABETH SANBORN VENTRE
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


SARA L MAYNARD  - DEFENDANT
77 FORESIDE ROAD,
CUMBERLAND FORESIDE ME 04110

Attorney for: SARA L MAYNARD
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


TODD W MAYNARD  - DEFENDANT
77 FORESIDE ROAD,
CUMBERLAND FORESIDE ME 04110
Attorney for: TODD W MAYNARD
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085


WILLIAM D MAYNARD  - DEFENDANT
77 FORESIDE ROAD,
CUMBERLAND FORESIDE ME 04110
Attorney for: WILLIAM D MAYNARD
JOHN BANNON  - RETAINED 10/28/2008
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085



Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 09/25/2008

## Docket Events:

09/25/2008 FILING DOCUMENT - COMPLAINT FILED ON 09/25/2008
           FOR DECLARATORY JUDGMENT, EXHIBITS A - H.   MH

09/26/2008 Party(s):  CHRISTOPHER J MCCORMICK
           ATTORNEY - RETAINED ENTERED ON 09/25/2008
           Plaintiff's Attorney: PETER BRANN

09/26/2008 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 09/26/2008

10/07/2008 Party(s):  MICHAEL D LACHANCE
           SUMMONS/SERVICE - ACCEPTANCE OF SERVICE SERVED ON 10/03/2008
           UPON DEF, MICHAEL LACHANCE TO SIGMUND D. SCHUTZ, ESQ.

10/07/2008 Party(s):  MOIRA LACHANCE
           SUMMONS/SERVICE - ACCEPTANCE OF SERVICE SERVED ON 10/03/2008
           UPON DEF, MOIRA LACHANCE TO SIGMUND D. SCHUTZ, ESQ. AD

10/17/2008 Party(s):  MICHAEL D LACHANCE,MOIRA LACHANCE
           RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 10/14/2008
           OF DEFS, MICHAEL D. LACHANCE AND MOIRA T. LACHANCE. AD

10/17/2008 Party(s):  MICHAEL D LACHANCE

ATTORNEY - RETAINED ENTERED ON 10/14/2008
Defendant's Attorney: SIGMUND D SCHUTZ

Party(s): MOIRA LACHANCE
ATTORNEY - RETAINED ENTERED ON 10/14/2008
Defendant's Attorney: SIGMUND D SCHUTZ

10/23/2008 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 10/23/2008
JOYCE A WHEELER , JUSTICE

11/05/2008 Party(s): SAMUEL S SCOTT,NANCY G REILLY,MARJORIE ADAMS,STEPHEN B BERGSON,SALLY B
MAYNARD,ELIZABETH SANBORN VENTRE,SARA L MAYNARD,TODD W MAYNARD,WILLIAM D MAYNARD
RESPONSIVE PLEADING - ANSWER & COUNTERCLAIM FILED ON 10/28/2008
WITH AFFIRMATIVE DEFENSES FOR ALL DEFS WITH THE EXCEPTION OF MICHAEL AND MOIRA LACHANCE
(DC)

11/05/2008 Party(s): SAMUEL S SCOTT
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

Party(s): NANCY G REILLY
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

Party(s): MARJORIE ADAMS
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

Party(s): STEPHEN B BERGSON
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

11/05/2008 Party(s): SALLY B MAYNARD
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

Party(s): ELIZABETH SANBORN VENTRE
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

Party(s): SARA L MAYNARD
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

11/05/2008 Party(s): TODD W MAYNARD
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

11/05/2008 Party(s): WILLIAM D MAYNARD
ATTORNEY - RETAINED ENTERED ON 10/28/2008
Defendant's Attorney: JOHN BANNON

11/13/2008 Party(s): CHRISTOPHER J MCCORMICK